SUPERIOR COURT OF BUFFALO.    December General Term, 1856.
*Clinton, Verplank* and *Masten,* Justices.

## THE PEOPLE *v.* ALBERT K. McMURRAY.

Where, on a trial for larceny, it appeared that the property stolen had not come
  to the possession of the prisoner, but had been received by C. on the order of
  the prisoner, and there was evidence tending to prove that C. was a confederate
  with the prisoner in the transaction, but C. testified to his entire innocence,
  and the judge charged the jury that they were to determine whether C. was
  an innocent agent of the prisoner in taking the property, and that if they so found
  and found also a felonious intent on the part of the prisoner, they should find
  him guilty, but that if they should come to the conclusion that C. had a know-
  ledge of the prisoner's felonious intent, then they should find the prisoner not
  guilty, on the ground that he was in that case only an accessory before the fact:
  *Held,* on review, that the charge was correct.

THE prisoner was convicted of grand larceny at the Novem-
ber Criminal Term, 1856, Clinton, J., presiding.  The larceny
was of a mare belonging to one La Duke, who, according to
his own testimony, was a French Canadian, having a very
imperfect knowledge of the English language.  He testified
that he had bargained with the prisoner to sell him the mare
for $600 in cash; that he went to one Westcott's stable to receive
the money; that he there saw the prisoner, Westcott, and
one Close; that the prisoner then told him the bank was closed,
and paid him $50, and gave him what was represented to be
his check for $550, payable the next morning; that he signed
in two places what was represented to be a receipt for the $50,
he insisting that the mare was to remain in his possession until
the next morning at ten o'clock; and that the papers were read
to him by Westcott.  The check was dated ten days ahead, and
the prisoner had no funds with the bankers on which it was
drawn.  The two signatures were in fact made to a receipt for
$600 in full for the mare, and an order upon the tavern keeper
in whose stable the witness had placed her, to deliver her "to
the bearer, A. K. McMurray."  The witness stated that Close
drew the papers, and, in speaking of the false representations
made to him, said, "they said."  This testimony tended to im-

plicate Close in the fraud. The witness, the prisoner West-cott, and Close, the papers being exchanged, went to a drinking place, and there the prisoner gave Close the order for the mare, and he went alone to the tavern keeper's stable, and, on exhibition of the order, procured her delivery to him, and took her to Westcott's stable. Close was examined as a witness for the People, and his testimony tended to exculpate himself from all knowledge of or participation in the fraud. The mare never came to the prisoner's possession in fact. On exceptions taken at the trial, a motion was made at the December General Term, 1856, for a new trial.

*William Dorsheimer*, for the prisoner, insisted that, as Close obtained possession of the mare, and the prisoner never had possession, the prisoner was liable, if at all, only as an accessory before the fact, and he made the following points:

I. An accessory before the fact is one who, being absent at the time of the felony committed, did yet procure, counsel or command another to commit it. But this rule is qualified by a principle which may be stated thus: Where a person of discretion makes an idiot, lunatic, or child of tender age, or a person entirely ignorant of the fact, the instrument of crime, the employer and not the innocent agent is answerable as a principal in the first degree. (3 *Greenl. Ev.*, § 9 ; *Regina* v. *Blearsdale*, 2 *Carr. & Kir.*, 768 ; 1 *Russell on Crimes*, 23 ; *Barbour's Crim. L.*, 281.)

II. Since every person is presumed to be conscious of his own acts, and to intend the natural consequences of them (3 *Greenl. Ev.*, § 14), the party seeking the application of the above qualification must be required to bring himself within the exception, and that by direct, positive, affirmative proof. This rule is carried into all classes of cases, and is stated in all the elementary treatises, and, it would seem, that it should be strictly enforced in a case where it is not pretended that the agent was insane, an idiot, or an infant of tender age, but where it appears that he took part in the preparation of the instruments used in accomplishing the crime.

III. It is a general rule that the prosecutor must prove every fact and circumstance which is material and necessary to constitute the offence. (3 *Greenl. Ev.*, § 23.)

IV. The position of the defence is, that the evidence which proves the guilt of the prisoner proves the guilt of Close, and the evidence which proves the innocence of Close, establishes the prisoner's innocence.

*Albert Sawin* (District Attorney), for the People.

*By the Court,* CLINTON, J. At the close of the trial, I refused to charge, as matter of law, upon the evidence, that the indictment should have charged the prisoner as an accessory before the fact, to a larceny of the mare by the witness, Close. I also refused to decide that "the question as to whether Close was a guilty party, ought not to be submitted to the jury;" or, in other words, was a question for the court. I refused to decide "that, inasmuch as the evidence implicated Close, the prisoner ought not to be put upon his defence, in the absence of affirmative proof on the part of the People, of the innocence of Close;" or, in other words, I refused to adjudge him guilty as a principal. I did, "among other things, charge the jury that they were to determine, upon the evidence, whether or not the witness, Close, was an innocent agent of the prisoner in taking the horse; that if they so found, and if they further found a felonious intent upon the part of the prisoner," in the taking by Close, "he could be convicted on the indictment; but if they found that Close had a knowledge of the prisoner's said felonious intent, then their verdict should be not guilty." In this I can see no error prejudicial to the prisoner.

The argument of his able and zealous counsel assumes that Close was, upon the evidence and by some rule of law, presumptively guilty. No such presumption arises from the fact that Close presented a genuine order of La Duke, the owner of the mare, for its delivery, and received it on the order, and took it to Westcott's stable. If the order had been forged, the case would have been different. Under the finding of the jury

The People *v.* McMurray.

it was void, because fraudulently procured by the prisoner, and Close could not be shown guilty in the taking, except by proving that when he presented the order and received the mare, he knew that the signature to the order was fraudulently procured, and this was most clearly a question for the jury.

La Duke's testimony tended to implicate both Close and Westcott as parties to the fraud. Close's testimony tended to exonerate himself. Westcott's tended to exonerate both himself and Close; and the conduct of both Westcott and Close, after the procurement of the mare by the latter, is consistent with honesty of intention. They kept her out of the prisoner's possession during the night, and Westcott restored her to La Duke in the morning.

The second point of the prisoner's counsel assumes either that Close is to be presumed guilty of the fraud, simply because he drew papers intrinsically honest, but the contents of which were fraudulently misrepresented to La Duke—a proposition too monstrous to require refutation; or simply because he presented the genuine order—a proposition which is equally monstrous. These circumstances, singly or conjointly, would have been utterly insufficient to carry the question of Close's guilt to the jury. To make them available in evidence against him, knowledge on his part of the proposed fraudulent use of the papers, and of the fraud itself, was necessary to be proven, and this could only be proven by his presence at the time of the fraudulent representations as to the contents of the papers, or by other circumstances. Surely the counsel would not require " direct, positive, affirmative proof " of innocence from a prisoner, whose guilt is not presumptively proven by a fact established by evidence in its nature indisputable, but where there is nothing but circumstantial evidence, given by witnesses whose accuracy in details as well as whose general credibility can be determined only by a jury.

The fourth point of the counsel for the prisoner confounds " evidence" with " witness." It is not true that the same evidence which proves the guilt or innocence of Close, establishes the guilt or innocence of the prisoner. The testimony of the

witness La Duke tends to prove both participants in the fraud, which he swears was perpetrated upon him, but in very different degrees. If fully credited, it establishes the guilt of the prisoner, but only tends to establish that of Close.

A new trial should be denied.

Ordered accordingly.

