## BRUNAUGH *v.* THE STATE OF INDIANA.

### [No. 21,361. Filed February 24, 1910.]

1. INDICTMENT AND INFORMATION.—*Presenting False Claim to Board of Public Works.*—Under §2586 Burns 1905, Acts 1905, p. 584, §675, providing that "whoever, knowing the same to be false or fraudulent, makes out or presents for payment * * * to the treasurer, or other accounting officer of any city or town * * * any claim, * * * account, * * * or other evidence of indebtedness * * * for the purpose of procuring the allowance of the same or an order for the payment thereof, out of the treasury of said * * * city or town * * * shall, on conviction" be fined and imprisoned, an indictment charging that defendant knowingly presented a false and fraudulent claim for street repairs to the board of public works of a city for allowance, sufficiently charges an offense, although the city controller has a right to disallow an allowance made by such board. p. 490.

2. CRIMINAL LAW.—*Presenting False Claim to Board of Public Works.—Indictment and Information.*—The crime of presenting a false claim to the board of public works of a city, under §2586 Burns 1908, Acts 1905, p. 584, §675, is complete when the claim is filed, its allowance being unnecessary, and it is not necessary in an indictment to allege that such board is an accounting officer of such city. p. 495.

3. INDICTMENT AND INFORMATION.— *Presenting False Claim.*— An indictment alleging that defendant presented a claim to the board of public works of a city for 16,691.9 square yards of street patching and that there was due therefor $11,016.65, when such repairs as actually made were "very much less" than the stated amount, the exact amount being to the grand jurors unknown, sufficiently shows that the claim was false. p. 495.

4. INDICTMENT AND INFORMATION.—*Sufficiency.*—An indictment so framed as to inform defendant of the charge which he is required to meet, is sufficiently definite. p. 497.

5. APPEAL.—*Admission of Evidence.—New Trial.*—Where evidence is admitted without objection, no question thereon can be raised on appeal. p. 498.

6. APPEAL.—*New Trial.—Admission of Evidence.*—The admission of the particular evidence claimed to have been erroneously ad-

mitted must be made a ground for a new trial in order to present any question thereon; on appeal. p. 498.

7.  TRIAL.—*Instructions.—Applicability to Evidence.*—Instructions given should be applicable to the evidence. p. 501.

8.  TRIAL.— *Instructions.— Applicability.— Evidence.— Presenting False Claim.*—An instruction that an act performed at the request or procurement of defendant is the act of defendant and he is liable therefor, is proper and applicable, where there is evidence tending to show that defendant changed the records of the amount of street patching, knowing that such records would be made the basis of a claim by his company against the city. p. 501.

9.  TRIAL.—*Instructions.—Right of.*—Parties have the right to instructions covering the law applicable to any legitimate view of the evidence which the jury might take. pp. 501, 503.

10.  TRIAL.—*Instructions.—Presenting False Claims.—Principals.— Accessories.*—Under a charge that defendant presented false claims for street patching to the board of public works, and there was evidence that he falsified the street inspector's books and gave them to his company upon which to base the company's claim for such work, the State is entitled to instructions on the theory that he was a principal in the crime, and also that he was an accessory, the state of the evidence warranting either view. pp. 501, 503.

11.  TRIAL.—*Instructions.—Misleading.—Presenting False Claim.*— An instruction, in a prosecution against defendant for presenting a false claim, that the State must prove that the claim in controversy contained some number of square yards in excess of the number actually done and some amount of money in excess of the sum actually due, that the mere change of figures in the books would not render defendant guilty, but it must be shown in addition "that the claim named in the indictment was for a quantity in excess of that actually done and for a sum in excess of the amount actually due," is not misleading. p. 504.

12.  TRIAL.—*Instructions.—Presenting False Claim.*—An instruction that if the jury believes, after considering all of the evidence of every class, given in the case, that the State has failed to prove all or any one of the material allegations of the indictment, he should be acquitted, is not bad on the ground that the indictment charged that defendant presented the false claim, while the proof shows that another presented it, since there was evidence showing that an innocent person presented it at defendant's solicitation. p. 504.

13.  CRIMINAL LAW.— *Indictment.— Evidence.— Presenting False Claim.*—Under an indictment against defendant for presenting a false claim to the board of public works, evidence is admissible

showing that another presented such claim at defendant's request; and it is not necessary to plead the evidence in an indictment. p. 505.

14. INDICTMENT AND INFORMATION.—*Certainty.*—No more certainty is required in an indictment under the criminal code than in a pleading in a civil action. p. 506.

15. EVIDENCE.—*Indictment.*—*Criminal Law.*— *Principal.*— *Accessory.*—One charged with a crime is conclusively presumed to know that any evidence admissible to prove such crime may be introduced against him; and if the crime charged is a felony and he is charged as a principal, he may be shown to be an accessory. p. 506.

16. CRIMINAL LAW.—*Indictment.*—*Evidence.*—*Conspiracy.*—Where a defendant is charged with the commission of a crime which is not a conspiracy, the State may, without any reference in the indictment to a conspiracy, prove that the defendant conspired with others to commit the offense. p. 507.

17. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 511.

18. APPEAL.—*Evidence.*—*Insufficiency.*—In determining the sufficiency of the evidence to sustain a judgment, only that most favorable to the prevailing party will be considered. p. 511.

19. CRIMINAL LAW.— *Presenting False Claim.*— *Evidence.*— Evidence showing that defendant contracted with a company to manage its street patching contracts for one-half the net profits, that he falsified the inspector's books and gave them to his company to be used in making claims for patching, that such patches as claimed far exceeded, in many instances, the full width of the streets patched, that he confessed to certain persons, and that he ran away, registering under an assumed name, supports a conviction for presenting a false claim. p. 512.

20. TRIAL.—*Consideration of Evidence.*—*Perjury.*—*Jury.*—Whether certain witnesses committed perjury on a trial is a question for the jury. p. 519.

From Criminal Court of Marion County (37,154) ; *Vinson Carter,* Special Judge.

Prosecution by The State of Indiana against Harry P. Brunaugh. From a judgment of conviction, defendant appeals. *Affirmed.*

*John W. Kern, Joseph E. Bell, Michael A. Ryan* and *John C. Ruckelshaus,* for appellant.

*James Bingham,* Attorney-General, *A. G. Cavins, E. M. White* and *W. H. Thompson,* for the State.

JORDAN, J.—Appellant was charged by indictment with having made out and presented for allowance to the board of public works of the city of Indianapolis a certain false and fraudulent claim in violation of §2586 Burns 1908, Acts 1905, p. 584, §675. The indictment is in three counts. A motion by appellant to quash each count was denied and proper exception reserved. There was a plea of not guilty, a trial by jury, and a verdict returned finding him guilty of making out and presenting a false and fraudulent claim for allowance, as charged in the third count of the indictment, and that his age was thirty-seven years. A motion for a new trial was overruled, and an exception reserved. Thereupon the court rendered its judgment that appellant pay a fine to the State of Indiana in the penal sum of $100, that he be imprisoned in the Indiana State Prison for the term of not less than two nor more than fourteen years, and that he pay and satisfy all costs.

He appeals to this court, and predicates error on the overruling of his motions (1) to quash the third count of the indictment, (2) for a new trial, and (3) in arrest of judgment.

The statute on which this prosecution is based, after eliminating certain parts thereof not pertinent to this prosecution, may be read as follows: "Whoever, knowing the same to be false or fraudulent, makes out or presents for payment or certifies as correct to * * * the board of commissioners or other officer of any county, or to the treasurer, or other accounting officer of any city or town * * * any claim, bill, note, bond, account, pay-roll or other evidence of indebtedness, false or fraudulent, for the purpose of procuring the allowance of the same or an order for the payment thereof, out of the treasury of said * * * county, * * * city or town; and whoever knowing the same to be false or fraudulent, receives payment of any such claim, account * * * or other evidence of indebtedness from the * * * treasurer or other paying officer of any county * * * city or town, shall, on conviction, be im-

prisoned in the state prison not less than two years nor more than fourteen years and fined not less than ten dollars nor more than one thousand dollars.''

While appellant was convicted upon the third count, thereby virtually eliminating in this appeal the first and second counts, still, on account of some of the rulings of the trial court, it may be useful briefly to note the charge as presented by the first and second counts of the indictment. Each of these counts alleges that appellant, at the time and place therein named, feloniously and knowingly made out and presented for allowance to the board of public works, etc., a certain false and fraudulent claim as therein stated. The only substantial difference between the first and third counts is that the former alleged that the number of square yards patched by the Western Construction Company during the month of April, 1907, on its contract with the city of Indianapolis, was 14,253.9 and no more, and that said city was indebted to said company for said work performed in the month of April in the sum of $9,407.57. The second count is substantially the same as the third, except that therein it is charged that the work done by the Western Construction Company for the month of April, 1907, under its contract with the city of Indianapolis, amounted to 11,815.9 square yards and no more, and that the amount due from the city for said work was $7,798.49.

The third count of indictment charges as follows: ''That on March 14, 1907, the defendant, Harry Brunaugh, entered into a certain contract in writing with the Western Construction Company, a corporation organized and acting under and pursuant to the laws of the State of Indiana, under and by which said defendant undertook and agreed to assist said Western Construction Company in procuring a written contract from the city of Indianapolis to repair the asphalt and vulcanite street pavements of the city of Indianapolis on which the guaranty period had expired, or was then about to expire, and in event such contract should be

awarded to said Western Construction Company to superintend the work of making such repairs thereunder, for all of which services said Western Construction Company undertook and agreed to pay to said defendant, and said defendant undertook and agreed to receive as his compensation there- for, a certain portion of the profits realized by said company under said contract; that thereafter, to wit, on or about March 20, 1907, said contract for making such repairs was awarded to said Western Construction Company, and thereupon said Western Construction Company did enter into its certain contract in writing with said city of Indianapolis, by and through the board of public works of the city of Indianapolis, to repair the asphalt and vulcanite street pavements of the city of Indianapolis on which the guaranty period had expired, or was then about to expire, undertaking to use Bermudez Pitch Lake Asphalt in making such repairs, for the sum of sixty-six cents per square yard, as might be required and directed by the city of Indianapolis, for which work said city of Indianapolis undertook and agreed to pay said Western Construction Company at the price before named; that thereafter, to wit, on or about April 3, 1907, said Western Construction Company entered upon the performance of its said contract with said city of Indianapolis, for the making of such repairs; and said defendant, Harry Brunaugh, entered upon the work of superintending the making of such repairs, as required and provided in said contract so entered into between himself and said Western Construction Company, and continued to perform such work during April, May, June and July, 1907; that after the execution of said contract by and between said Western Construction Company and said city of Indianapolis for making such repairs, said city did, prior to April 30, 1907, require and direct said Western Construction Company to make repairs under said contract upon the following streets of the city of Indianapolis, in-

cluded in said contract, to wit: * * * that said Western Construction Company did, under and pursuant to said contract and such requirements and directions, make repairs on said streets in said city during the month of April, 1907; that thereafter, on May 10, 1907, at and in the county of Marion and State of Indiana, said Harry Brunaugh, while in the employ of the Western Construction Company as aforesaid, assuming and pretending to make a true statement of the amount of all the surface of such repairs so made by said Western Construction Company during said month of April, 1907, under its contract with said city, and the amount due said company on account thereof, did then and there unlawfully, feloniously, knowingly and designedly, with intent to cheat and defraud the city of Indianapolis, make out and present to said board of public works of said city of Indianapolis, for the purpose of procuring the allowance of the same by said board of public works, a certain false and fraudulent claim against said city of Indianapolis, wherein the amount of the surface of such repairs so made by said company under said contract during the month of April, 1907, was stated as 16,691.9 square yards, and the amount due to said Western Construction Company on account thereof was stated as $11,016.65, which sum was therein stated and alleged to be justly due and owing from said city of Indianapolis to said Western Construction Company under said contract, and was due and unpaid, which claim was verified by the oath of George W. Baxter, cashier of said company; that the amount of the surface of such repairs actually made by said construction company under said contract during the month of April, 1907, was very much less than the 16,691.9 square yards stated in said claim, the exact number of square yards of such repairs so made is to said grand jurors unknown; and that the amount due said Western Construction Company on account thereof was very much less than said $11,016.65, the amount stated in said claim, the exact amount due on account of said repairs

is to the grand jurors unknown; that at the time said Brunaugh made out and presented said false and fraudulent claim to said board of public works he well knew that the number of said square yards stated in said claim as 16,691.9 square yards was greatly in excess of the amount of square yards of surface of the repairs so made in said streets by said company, under its contract with said city, during the month of April, 1907, and that the city of Indianapolis was not indebted to said Western Construction Company for such repairs so made by it during the month of April, 1907, in said sum of $11,016.65, but was indebted therefor in a very much less amount, contrary to the form of the statute," etc.

The first objection urged against the sufficiency of the third count of the indictment by appellant's counsel is that it does not allege that the board of public works of the

1. city of Indianapolis is an accounting officer of that city, the contention being advanced that the city controller is the only accounting officer that comes within the meaning of the statute on which this prosecution is founded. This insistence manifestly is without support and wholly untenable.

The board of public works of the city of Indianapolis, under the governing statutes pertaining to that city, is invested with a general supervision over its streets, and is required and empowered to keep them in repair and in good condition. The repairs of the streets as provided by the statute may be done by employes of the board or by contract, as such board of public works may deem best, except when part of the expense is to be met by assessment against property. Upon all obligations or claims against the city incurred by its board of public works under a contract for the repair of the streets the board is fully empowered by the statute to consider such claims, to allow the same, and to issue a warrant for their payment. See §§8696, 8697 Burns 1908, Acts 1905, p. 219, §§93, 94.

While the city controller stands at the head of the department of finance and is an accounting officer, nevertheless, he is not invested with any power to allow a claim against the city in favor of any person on account of work performed in repairing the public streets under a contract with the board of public works, and to issue a warrant for the payment of such claim.

It is true that when the board of public works allows a claim against the city, and causes a warrant to be issued upon such allowance, it does so subject to the further action or approval of the city controller, and the latter official, under the provisions of §8690 Burns 1908, Acts 1905, p. 219, §87, has the power—not arbitrarily, however—to examine in respect to such claim and warrant, to disapprove the same, and to notify the proper department of his action in the matter.

The essential step required to be taken upon the part of the Western Construction Company, in order to obtain payment for the whole or any part of the work which it had performed under its contract with the board of public works for the repair of the streets of the city, was first to secure the allowance of its claim by that board. And while it may have been necessary for that company to take additional steps leading up to the payment of its claim as allowed by the board of public works, and while the city controller, under the statute, might have disapproved the order or warrant issued by the board, nevertheless, these provisions of the law authorizing his disapproval do not serve to show that the board of public works was not another "accounting officer" of the city within the meaning of the criminal statute in question. In fact, the board of public works was the only head or tribunal invested with authority in the first instance of auditing, passing upon and allowing such claim. Under the facts, it would have been of no avail for the claim to be first presented, before its allowance by the board of

public works, either to the city treasurer or to the city controller.

We have not been referred to any law which would have rendered it unnecessary to present to the board of public works for allowance, as a condition precedent to their payment, claims arising out of the work performed upon the public streets of the city of Indianapolis by the Western Construction Company.

In the case of *Wilson* v. *State* (1901), 156 Ind. 631, the appellant was prosecuted under the same statute as here involved, for presenting a false claim to the board of commissioners of Shelby county for the purpose of procuring the payment thereof out of the county treasury. In that appeal it was insisted that the allegation in the indictment, that the accused had made out and presented said claim to the board of commissioners of Shelby county for the purpose of procuring an order for its payment out of the county treasury, was insufficient, for the reason that boards of commissioners are only authorized to allow claims against the county, and not to issue orders for payment out of the county treasury. This court in answering that contention said: ''While it is true that boards of commissioners are only authorized to allow claims against the county, and not to issue orders, yet no order on the treasury of said county for the payment of the claim described in the indictment could have been issued by the auditor of said county for the payment thereof, until after the same had been allowed by the said board of commissioners. The making out, and verification of said claim, and the filing thereof in the auditor's office, and presenting the same to the board of commissioners, were steps necessary to procuring an order for the payment thereof out of the county treasury.   *   *   *   It is true that the commissioners do not issue the order, but their allowance, as we have said before, was an essential step in procuring the order, and without which it could not be procured.''

The case of *Ferris* v. *State* (1901), 156 Ind. 224, was a prosecution under the same statute for the presentation by appellant to the board of commissioners of a false and fraudulent claim, for the purpose of securing its allowance. The court, in the course of its opinion, held that the gist of the indictment was that the appellant had undertaken to defraud Shelby county, by procuring money from its treasury wrongfully; that the money could not be procured from the board of county commissioners, but that the utmost that appellant could do was to secure from the board an allowance of the claim. This allowance the court held it was necessary to have before the claimant could proceed further with his claim, and that the purpose of the accused in presenting the claim was to secure its allowance, which allowance carried with it the right to demand and receive a warrant upon the treasury.

In the case of *Hauck* v. *State* (1887), 45 Ohio St. 439, 14 N. E. 92, the accused was prosecuted under a statute substantially the same as the one upon which the indictment against the appellant in the case at bar is based. That statute provided: "Whoever, knowing the same to be false and fraudulent, makes out, or presents for payment, or certifies to be correct  *  *  *  to the auditor or other accounting officer of any municipal corporation  *  *  *  any claim, *  *  *  account,  *  *  *  or other evidence of indebtedness, false or fraudulent, in whole or in part, for the purpose of procuring the allowance of the same,  *  *  *  shall be guilty," etc.

The indictment in that case charged that the defendant had made out and presented to the board of infirmary directors of the city of Cincinnati, Ohio, a false and fraudulent bill for the purpose of procuring an allowance of it by that board. The contention of counsel for the accused was that the board of infirmary directors of the city of Cincinnati did not come within the meaning of the language "other accounting officers" of the corporation of the city of Cincinnati, as

employed in the statute under which the indictment had been framed.

The court in that appeal, in the course of its opinion, said: "It is presenting a false and fraudulent claim (for the purpose of procuring its allowance) to some board or officer authorized to allow it, which constitutes the offense. It seems too clear for serious discussion that the words 'other accounting officer' imply such an officer as may lawfully pass upon and allow a claim or account against a municipal corporation, upon the authority of which allowance the controller may issue his warrant upon the treasurer; and even if these words were not chosen with a view to their prior technical signification, the fact of their employment in the connection in which we here find them, is sufficient in itself to enlarge or qualify the sense in which they had theretofore been used. Looking to the mischief which this statute was designed to remedy, the approved canons of construction permit us to construe it as if it provided that 'whoever knowingly presents a false or fraudulent claim against a municipal corporation to an officer thereof having power to allow it, for the purpose of procuring the allowance of the same, shall be guilty of a crime.'"

It will be noted that the statute charged to have been violated by appellant makes it an offense for any person to present a false or fraudulent claim for the purpose either of procuring the allowance thereof or of procuring an order for the payment of such claim out of the particular treasury mentioned. Appellant, under the indictment, is not charged with presenting the claim in question to the board of public works for the purpose of procuring an order for the payment of the claim, but for the purpose of procuring its allowance by said board.

It is evident that one of the purposes of the statute is to prohibit, under penalty, the presenting, for the purpose of having the same allowed, a false or fraudulent claim against any of the several municipalities mentioned, to some board

or official thereof invested under the law with the power of auditing and allowing claims against such municipality. The fact that such board or officer has authority or is invested with power by law to audit and allow claims certainly must make it, or him, as the case may be, an accounting officer well within the meaning of the statute. It follows, therefore, that when appellant presented the false and fraudulent claim in controversy to the board of public works of the city of Indianapolis for the purpose of procuring its allowance by the board against said city, he committed an offense as declared by the provisions of §2586, *supra.*

It is not essential to the consummation of the offense that the claim should be audited or allowed, or that other steps should be taken in furtherance of the payment of the claim out of the treasury of the city. The crime contemplated by the statute was fully consummated by presenting the claim to the board of public works for the purpose of procuring its allowance against the city. Whether the board of public works is an accounting officer of the city of Indianapolis is not a question of fact but a matter of law; therefore, it was not necessary for the State in the indictment to charge that said board was an accounting officer in order to render the pleading sufficient. §2047 Burns 1908, Acts 1905, p. 584, §176; *State* v. *McDonald* (1886), 106 Ind. 233; *State* v. *Downs* (1897), 148 Ind. 324.

The third count of the indictment refers only to and includes work done by the Western Construction Company during the month of April, 1907, upon the public streets as therein mentioned. It is then charged that the amount of the surface of such repairs made by said company under its contract during the month of April, 1907, as the same is stated and shown in the false and fraudulent claim presented against the city was 16,691.9 square yards, that the amount stated in said claim to be due said construction company on account of said work was $11,016.65, that

this latter sum was in said claim alleged to be justly due and owing from the city of Indianapolis to said company under said contract, and that the same was due and unpaid.

The indictment then charges that the amount of the surface of such repairs on the streets actually made by said construction company under its contract during the month of April, 1907, "was very much less than the 16,691.9 square yards, stated in said claim; that the exact number of square yards of such repairs so made, as alleged, was to said grand jurors unknown; that the amount due said Western Construction Company on account thereof was very much less than said $11,016.65, the amount stated in said claim, and that the exact amount due on account of said repairs, as alleged, was to the grand jurors unknown."

The indictment, under its averments, shows that the amount of work as stated in the claim was not the amount actually performed by the company during the month of April, 1907, and that the amount claimed by the company to be due for such work was in excess of that which was actually due. Or, reduced to a simple proposition, the indictment shows that the claim as presented stated that a certain amount of work was performed, but that in fact the amount of work actually done by the company was very much less than that stated in the claim presented, and that the claim was for more money than was actually due upon the work which the company had done during the month of April, 1907. These facts, as alleged, without further particularizing, show that the claim, when presented, was a false one within the meaning of the statute in question.

In the case of *United States* v. *Shapleigh* (1893), 54 Fed. 126, 4 C. C. A. 237, which was a prosecution under the federal statute of a similar import to the one upon which this case is based, the court defined a false claim to be one presented for more work performed or supplies claimed to have been furnished to the government than had been actually performed or furnished.

It is alleged that the exact number of square yards of repairs actually made by the Western Construction Company during the month of April, 1907, is unknown to the grand jury, as was also the amount of money due on account of such work. The grand jury, therefore, could only allege the facts as shown by the evidence which it had before it, namely, that the number of square yards of repairs actually made ''was very much less'' than 16,691.9 square yards, the number as set out in the claim presented, and that the amount due to the company on account of the work ''was very much less'' than $11,016.65, the amount of money stated in said claim to be due and unpaid. These allegations, together with others, fully disclose that the claim presented was false within the meaning of the law.

While the third count of the indictment is not so framed as to constitute it a model pleading, nevertheless, in the charging part thereof the facts are positively averred, and it is not, as claimed by appellant's counsel, open to the objection that it states conclusions instead of averring facts, and requires the court to indulge in presumptions against the accused. It is sufficiently definite or particular, and may be said fully to apprise appellant of the charge which he is required to meet.

The decision of this court in the case of *State* v. *Metsker* (1908), 169 Ind. 555, relied upon by counsel for appellant, does not support their contentions. The allegation of facts in the latter case and the charges in the indictment in this case are easily distinguished. The decision in the case just cited falls far short of supporting appellant's insistence in regard to the insufficiency of the third count of the indictment. We hold, therefore, that the latter count is sufficient, and that the trial court did not err in overruling the motion to quash.

The next alleged errors, as pointed out in appellant's brief, are: (1) That the court erred in admitting the testimony

of Thomas Shufelton, that appellant offered to pay him $150 per month if he would increase one-third the sizes of the patches made in repairing the streets.    (2) That the court erred in admitting the testimony of Thomas Shufelton as to the amount of work done by the Western Construction Company during the months of May, June and July, and as to the amounts received and claimed by said company for the work done in each of said months.    (3) That the court erred in admitting the testimony of John Rosasco as to the amount of work done by said company during each of the aforesaid months, and as to the amount claimed by said company for the work done in each of those months.

As to the first point, the record does not disclose that any objection was made at the trial to the introduction of the evidence in controversy.  Neither does it appear that the alleged error of the court in admitting it was assigned as a reason for a new trial in the motion.

In respect to the second point before set out, we do not find that any such ruling of the court as is stated in said second point is assigned as a reason for a new trial.  It is true that in the motion for a new trial we find in the ninth reason assigned therefor the following: ''Error of law occurring at the trial in this, to wit:   That the court admitted in evidence, exhibit No. 49, being Mr. Shufelton's record from the first day of May for the entire month of May, offered by counsel for the State.''   This assignment certainly does not in any manner embrace or respond to the point made in appellant's brief that the court erred in admitting the testimony of Thomas Shufelton as to the amount of work done by the Western Construction Company for the months of May, June and July, etc.   There is an entire absence of any assignment in the motion for a new trial in regard to the point as made that the court erred in admitting the testimony of John Rosasco as to the amount of work done by the Western Construction Company during the months of May, June and July and as to the amounts claimed therefor.

It follows, for the reasons stated, that we cannot consider any of the points made and advanced by appellant in regard to the errors of the court in admitting the evidence of the witnesses Shufelton and Rosasco.

Appellant's counsel next criticise instructions eight, nine, ten, twelve and thirteen, given to the jury by the court. The eighth and ninth are not condemned upon the ground that in either of them the court erred in stating an abstract principle of the criminal law, but the contention is that neither applies to nor is relevant to any evidence given in the case. By the eighth instruction the court informed the jury that it was a principle recognized by the law, "that an act performed by one person at the request, procurement, command or instigation of another, is the act of such other person; or, to state it in other words, that which a person does by another he does for himself." As a part of this instruction the court set out that section of our criminal law which declares that "every person who shall aid or abet in the commission of a felony, * * * may be charged, * * * tried and convicted in the same manner as if he were a principal." §2095 Burns 1908, Acts 1905, p. 584, §224.

By the ninth instruction the court advised the jury that where an act which is criminal and felonious is done by an innocent person or agent, but the performance of such criminal act has been brought about by another person, knowingly and intentionally, then the law treats the person who has caused such innocent person to perform such act as himself being the doer thereof, although at the time of the doing of the act he may not be personally present.

By the tenth instruction the court summed up certain facts. This instruction is as follows: "If you should find from the evidence, beyond a reasonable doubt, that the defendant procured the possession of certain books in which the official inspectors for the city of Indianapolis entered the dimensions of the patches of repair asphalt work being done by the Western Construction Company under a contract

with said city; that while the defendant had such books in his possession he purposely, intentionally and unlawfully changed the figures showing the dimensions of said repair patches, or caused or procured the same to be changed, so as to increase the size and cost thereof in excess of the size and cost of the work actually done, and that after making such changes, if he did make them, the defendant either copied or caused to be copied said changed dimensions into the books of said Western Construction Company, he at the time knowing that the Western Construction Company would use said copied dimensions as the basis for stating and making out a claim against said city, and at the time he made said changes and copied or caused the same to be copied into the books of said Western Construction Company, if he did so make said changes and copies, he intended that the same should be used by said company as the basis of a claim to be made and presented against said city, and that afterwards said Western Construction Company through and by its proper officer, innocently and without knowledge of any wrong in the matter, did use said changed and copied dimensions as the basis of a claim against the city as charged in the indictment, and which claim was made, presented to, and allowed and paid by said city to the said Western Construction Company, and if you should also find from the evidence, beyond a reasonable doubt, that after said claim was paid to the Western Construction Company by said city, said company paid to the defendant a portion of the proceeds of said claim as his share thereof—then you would be warranted in finding that said claim so based and made on said changed dimensions was made and presented by the defendant, although he may not have been personally present when the same was done, and although the claim may have been actually written and carried to and delivered to the board of public works of said city by an officer, clerk or cashier of said Western Construction Company.''

We recognize the rule which requires that instructions

given by the court to a jury should be pertinent or applicable to the evidence in the case, but we are unable to agree

7. with appellant's learned counsel in their claim that there is no evidence in this case to which instruction eight might be applicable or pertinent. There is at

8. least circumstantial evidence in the case which may be said to give color to or tend to show that Brunaugh aided or abetted other persons in the commission of a felonious crime, although it appears that he did not himself in person present the false claim for allowance. While such evidence may to an extent be said to be weak, nevertheless, as said in the case of *Reed* v. *State* (1895), 141 Ind. 116, 122: "If there were any facts or circumstances in the case, although quite meager, to which the instructions might, upon any view, be pertinent, provided they were correct in the statement of the law, it would not be error for the court to give them."

The State had the right to have the jury instructed by the court in respect to the law applicable to any legitimate

9. view which, under the evidence, the jury might entertain. *Reed* v. *State, supra; Noland* v. *State* (1878), 3 Tex. App. 598; 12 Cyc., 613.

Appellant's counsel argue that instruction eight proceeds upon the theory that there was a principal criminal in the case, and that appellant aided or abetted the princi-

10. pal criminal, who might, under the statute set out in the eighth instruction, be tried and convicted as a principal.

It is further claimed that instructions nine and ten proceed upon the theory that apellant committed a felonious crime through or by some innocent person or agent whom he caused to present the false claim in question, although he, at the time the claim was presented, was not personally present.

The argument is then advanced that the trial court by said instructions eight and nine placed before the jury two

inconsistent theories and thereby invited the jury to take its choice. This it is asserted the trial court did, while in fact there is not a word in the indictment to apprise appellant that upon his trial he would be called upon to meet either of these theories. In support of this contention counsel refer to the indictment, and say that therein appellant is directly charged with having performed the physical act of making out and presenting the false and fraudulent claim in controversy, but when placed upon his trial the State confronts him, not with the proof that he made out and presented the claim himself in person, but that the claim was made out and presented by some third person.

For the reasons given, it is argued that instructions eight, nine and ten were not relevant to the charge as presented against appellant under the indictment, but it is said that they were based upon a total misconception of the law relating to a criminal pleading and practice.

As we understand the State's position, it entertains but one general theory, which is that appellant is guilty of the commission of the crime imputed to him by the indictment.

The State claimed the right below, and properly so, to introduce any and all legitimate evidence to sustain its general theory, and to have the jury consider every proper view of the case as the same might be presented by the evidence. Under the indictment there is but one offense charged against the appellant, which is that of presenting to the board of public works of the city of Indianapolis, for the purpose of having it allowed, the false and fraudulent claim in issue. The cardinal question which the jury had to determine under the evidence was the guilt of appellant of committing the crime with which the grand jury has accused him. The State contends that he is guilty as shown by the evidence, therefore, under this general theory as advanced by the State, it was not confined alone to a single view or theory in respect to how, or for what reason, under the evidence, his guilt is to be shown. *Burke* v. *State* (1880), 72 Ind. 392.

The State certainly had the right to have the jury consider any view in respect to his guilt, provided there was legitimate evidence in the case to support such view, and also to have the trial court instruct the jury upon the law relevant to its view. *Banks* v. *State* (1901), 157 Ind. 190; *Cook* v. *State* (1907), 169 Ind. 430.

We believe the evidence in the case to be of such a character as to justify the State in claiming before the jury that while it did not appear therefrom that appellant actually made out and presented the false claim in dispute, nevertheless, there was evidence to establish that he committed the crime charged through the instrumentality of an innocent person or agent.

Again, we believe there is evidence to warrant the State in making the claim that another person was the principal offender in the case, and that appellant but aided or abetted such principal in the commission of the felonious crime, and that under §2095 Burns 1908, Acts 1905, p. 584, §224, being the same section set out in instruction eight, he might be charged and convicted ''as if he were a principal.''

It cannot be said that there is any theoretical inconsistency between these two claims. It may, however, be said that neither the judge nor the jury in a case is to be tied down closely to the theories advanced by either of the respective parties. Generally speaking, the jury in the trial of a cause has before it all of the evidence, circumstantial and otherwise, and is at liberty to draw therefrom its own conclusions, although such conclusions may differ from the theories advanced by either or both of the parties. *People* v. *Wallin* (1885), 55 Mich. 497, 22 N. W. 15. In view of the evidence in this case, to which we shall hereafter refer, and the law relevant thereto, we are of the opinion that the trial court did not err in giving instructions eight, nine and ten.

Appellant's counsel complain of instruction twelve. By this instruction the court stated to the jury that it was ''neces-

sary for the State to prove beyond a reasonable doubt that the claim in controversy did contain some number of square yards in excess of the number actually done and some amount of money in excess of the sum actually due.'' The court further said: ''The fact, if such be the fact, that the defendant made changes in the figures showing the dimensions of patches in the inspector's books of measurements of work done, would not alone render the defendant guilty of presenting a false claim, but the State must then in addition show that the claim named in the indictment was for a quantity in excess of that actually done and for a sum in excess of the amount actually due.'' This charge is criticised because, as pointed out by counsel for appellant, the court did not inform the jury as to what was meant by the phrase, ''for a quantity in excess of that actually done.'' It is claimed that the jury could not understand whether the court meant quantity of work or quantity of something else. There is certainly no merit in this insistence. Reading the instruction as a whole, certainly it cannot be claimed that the jury could not understand what the court intended by the phrase in question.

Instruction thirteen is criticised because the court therein stated that ''if you believe, after considering all of the evidence of every class given in the case, that the State has failed to prove beyond a reasonable doubt all or any one of the material allegations alleged and charged in the indictment, then you cannot find defendant guilty, and you should not find him guilty.'' The objection of the appellant to this instruction is that it is not applicable to the evidence, because it did not appear that appellant in person made out and presented the claim in controversy to the board of public works. This criticism is not tenable, for if, as contended by the State, appellant presented the claim in question for allowance to the board of public works through the instrumentality of an innocent person or agent, he would be as equally guilty as though

he presented it himself in person. The instruction in question is clearly applicable to the evidence in the record.

We have fully examined and considered all of the instructions given by the court on its own motion and those at the request of appellant, and are thoroughly satisfied that the jury was fully advised as to the principles of law applicable to the case, and that all of appellant's rights under the law were fully safeguarded by the court's charge to the jury.

Appellant's counsel contend that inasmuch as the indictment charges appellant directly with having made out and presented the false claim to the board of public works, 13. therefore, he had a right to assume that the State at the trial would prove that he in person made out and presented the claim.

Continuing, counsel assert: "We submit that it is shown by the record that not a syllable of competent evidence was offered by the State in support of the allegation that the defendant made out and presented for allowance the false and fraudulent claim. On the contrary, the State proved as a part of its case that the claim in question was made out and presented by George W. Baxter."

Appellant is not justified in claiming that he had the right either to assume or expect that at the trial the State would be confined to proving that he personally presented the false claim for allowance to the board of public works. It will be noted that in the third count of the indictment as set out, after giving the date and venue, it is charged that the defendant "did then and there unlawfully, feloniously, knowingly and designedly, with intent to cheat and defraud the city of Indianapolis, make out and present to the board of public works of the city of Indianapolis, for the purpose of procuring the allowance of the same * * * a certain false and fraudulent claim against said city."

Section 2040 Burns 1908, Acts 1905, p. 584, §169, provides that an indictment or affidavit shall contain "a state-

ment of the facts constituting the offense in plain and concise language without unnecessary repetition.'' The indictment in question not only complies with the requirement of the criminal code, but in addition resorts to particulars in respect to the commission of the offense.

The State was required to allege the facts constituting the offense, but it was not required to set forth in its pleading the evidence upon which, on the trial, it would rely for a conviction. Under our code of criminal procedure no more certainty is required upon the part of the State as 14. a plaintiff in its pleading than is required of a plaintiff in his complaint in a civil action. All that is necessary is that the allegations be certain to a common intent. *Lane* v. *State* (1898), 151 Ind. 511, and authorities cited.

The particular crime, in this case, alleged against the appellant is, under the express and positive averments of the indictment, certain, at least to a common intent. The 15. indictment fully informs the accused that on the trial he will be required to meet the charge that he unlawfully, feloniously, knowingly, designedly, and with intent to cheat and defraud the city of Indianapolis, made out and presented to the board of public works of that city for allowance the false and fraudulent claim in question, and that he knew that such claim was false and fraudulent at the time it was presented. This is the particular offense charged, and the one which the court and jury, under the averments of the indictment, must have understood was to be tried and determined. In these respects the indictment is fully sustained by the decision in the case of *State* v. *Metsker* (1908), 169 Ind. 555. Under the charge as made in the indictment, appellant, in the eye of the law, must be held to have been apprised of the kind of evidence which the State might introduce and rely upon to prove him guilty of the crime as charged. He must be presumed to know the law. Consequently, he may be said in a legal sense to have been advised by the indictment of the nature of the evidence which the

State, under the law, would be permitted to introduce and rely upon to secure his conviction of the offense charged. Under the law he was required to know that the State would not be confined alone to showing that he made out and presented the claim in controversy, but that the State, without any additional allegations or averments in its pleading than those therein contained, would be legally authorized to prove, under §2095, *supra,* that he aided or abetted another in the commission of the felonious offense charged, or that he had counselled, encouraged, hired or procured another person to commit it, and therefore might be charged by the State in the indictment as a principal, and tried and convicted in like manner as if he were the principal criminal. *Williams* v. *State* (1874), 47 Ind. 568; *Rhodes* v. *State* (1891), 128 Ind. 189, 25 Am. St. 429.

Again, on the charge as presented by the indictment, the State had the legal right to establish by competent evidence that appellant had committed the crime through the medium of an innocent agent, although at the time the false claim was presented to the board of public works for allowance he was not personally present. These well-recognized principles of law he was bound to know and recognize, consequently he cannot be heard to say that he was confronted upon his trial with evidence which he could not expect nor anticipate would be admissible under the indictment upon the part of the State to prove him guilty of the offense charged.

Appellant, under the indictment herein, might have been convicted of committing the offense in question through a conspiracy with others, for it is settled that in the 16. prosecution of a criminal case in which the real offense perpetrated is not a conspiracy, the State may, without charging or referring to any conspiracy in the indictment, prove that the accused conspired or combined with others in the commission of the felonious crime charged

against him.  *Reed* v. *State* (1897), 147 Ind. 41; *Cook* v. *State, supra.*

In the case of *Reed* v. *State, supra,* the defendant was charged by indictment in two counts.  The first charged him with the commission of the crime of burglary, and the second with that of larceny.  Upon the trial before a jury he was convicted of the charge of burglary on the first count of the indictment.  The court gave to the jury two instructions in respect to the theory of a conspiracy.  The appellant in that case claimed that these instructions were erroneous, because there was no charge in the indictment in respect to a conspiracy.  The court, in answer to the contention of the appellant said:  "No reason or authority is assigned for the proposition that one charged, as a principal, with a felony, may not be convicted upon evidence of a conspiracy to commit the crime, and an actual participation in the act constituting the crime."

While it is true that the evidence in this case cannot be said to establish that appellant in person presented the false claim for allowance, nevertheless there is ample evidence to lead the jury to infer that he, in committing the crime charged against him, acted through the instrumentality of an innocent person, although he was himself personally absent at the time the claim in question was presented for allowance.  The proposition that one is a principal criminal who is guilty of the commission of a crime by or through another person is well settled by authority.

In Gillett, Crim. Law (2d ed.), §13, the author says:  "A man is a principal, whatever agencies he employs, if the crime is committed by his will alone.  His presence is immaterial.  This doctrine extends to the case of the innocent agent, who, acting under mistake of fact, becomes the instrument in the hands of the principal for the commission of the unlawful act."

In 1 Bishop, Crim. Law (8th ed.), §310, the author, in

dealing with the question of a crime committed through an innocent agent, says: "Such an agent is one who does the forbidden thing moved by another person, yet incurs no legal guilt because either not endowed with mental capacity or not knowing the inculpating facts."

In 1 Wharton, Crim. Law (10th ed.), §207, it is said: "A party, also, who acts through the medium of an innocent or insane medium, or a slave, is guilty, though absent, as principal in the first degree; while he would be guilty only as accessory before the fact at common law were the agent a responsible and conscious confederate."

In 1 Bishop, Crim. Law (7th ed.), §649, it is said: "Therefore a man whose sole will procures a criminal transaction is principal, whatever physical agencies he employs, and whether he is present or absent when the thing is done. Or, if he is present abetting while any act necessary to constitute the offense is being performed through another, though not the whole thing necessary—and perhaps, while any act is being done which may enter into the offense, though not strictly necessary,—he is a principal."

In 1 Bishop, Crim. Law (7th ed.), §651, the author says: "And because there must always be a principal, one is such who does the criminal thing through an innocent agent, though personally absent."

In the case of *Bishop* v. *State* (1857), 30 Ala. 34, the defendant was charged with forgery. It was shown that he, through the hands of an innocent agent in another county, uttered and published as true a forged instrument. It was held that he was guilty of the crime of forgery committed in the county where he uttered the forged document through his innocent agent. In dealing with the question, the court in that case said: "In such case, the agent is the mere instrument of his principal, and is no more guilty than any other instrumentality which a felon may employ to accomplish his ends. For all criminal purposes, the agency is as

unimportant as a mail-carrier who bears a letter containing a forgery."

In the case of *People* v. *McMurray* (1856), 4 Parker Cr. Rep. 234, it is held that the innocence of the agent through whom the crime is perpetrated is a question for the jury, and that where the evidence tends only to establish guilt or guilty knowledge of the agent, but clearly shows the guilty knowledge of the principal, the result will be that the latter will be held to be the principal and not an accessory.

Further upon this question see *Willingham* v. *State* 1894), 33 Tex. Crim. 98, 25 S. W. 424, and *Commonwealth* v. *Seybert* (1887), 4 Pa. Co. Ct. 152, 154-155.

Counsel for appellant apparently do not deny the doctrine that their client can be convicted of having committed the offense through an innocent agent, but to restate their contention, it is that he had no reason to expect or anticipate that the State would be permitted upon the trial to introduce any evidence other than to show that appellant had personally made out and presented the false claim for allowance. As previously shown, a person charged in an indictment with the commission of a felonious crime may be convicted upon evidence that he committed the offense through a conspiracy into which he had entered with others, although there may be an entire absence in the indictment in such case of any charge in regard to such conspiracy. So with equal reason and force the argument might be advanced in such a case, as is done on behalf of appellant, that the accused in the former case was not required to and did not expect nor anticipate that on his trial he would be confronted with evidence in respect to a conspiracy into which he had entered leading up to the commission of the offense charged.

The next and last insistence of appellant's counsel is that the evidence is not sufficient to sustain the verdict. Under this head they renew their argument that there is an absence of any evidence to show that appellant made out and pre-

sented the claim as charged in the indictment. They further insist that there is no evidence to show that the claim in question was for more work than had actually been performed by the Western Construction Company in the month of April, 1907, or for more money than was due to the company for work done upon the streets of the city of Indianapolis during that month. The evidence in the case is quite voluminous, consisting in part of a number of documents. It is also in part circumstantial and in part direct and positive.

In view of a well-settled rule, we are not authorized to weigh the evidence in a case on appeal and attempt to reconcile conflicts therein. Consequently, when the evidence in a cause appealed to this court is assailed as insufficient to support the judgment, we consider only the evidence which is most favorable to the adversary of the appellant, and if we find evidence therein which supports the judgment below on every material point, we are bound to accept it, and, under the circumstances, we are not permitted to disturb the judgment upon the question raised in respect to the insufficiency of the evidence. Or, in other words, as our cases assert, in a criminal cause there must be such an absence of evidence in respect to some fact or allegation material to the crime charged as to present a question of law, which, under the circumstances, must be decided in favor of the convicted party. *Deal* v. *State* (1895), 140 Ind. 354; *Lee* v. *State* (1901), 156 Ind. 541, and authorities cited; *McCarty* v. *State* (1891), 127 Ind. 223; *Shular* v. *State* (1903), 160 Ind. 300.

There can be no reversal upon the evidence alone, because the latter may be said to appear to be weak or unsatisfactory to this court, nor because all persons may not draw the same inference or conclusions therefrom. *Sanderson* v. *State* (1907), 169 Ind. 301; *Williams* v. *State* (1905), 165 Ind.

472, 2 L. R. A. (N. S.) 248; *Lee* v. *State, supra; Rosenbarger* v. *State* (1900), 154 Ind. 425; *Knox* v. *State* (1905), 164 Ind. 226, 108 Am. St. 291.

We shall refer to some of the evidence as we find it in the record. It appears that the Western Construction Company is a corporation. It has an office in the city of LaFayette, Indiana, and one in the city of Indianapolis, and its plant is in the latter city. It was engaged in constructing streets and repairing the same, and on March 18, 1907, a contract was let to it for a period of one year by the city of Indianapolis for repairing the streets of that city by patching the same with asphalt. On March 14, 1907, said Western Construction Company entered into a contract with appellant, wherein it was provided that the company agreed to employ him in its service for a period of one year to assist in obtaining a contract with the city of Indianapolis. It was provided that if the contract be secured appellant should superintend the work for said company for a period of one year, and it further provided that he should be paid for his service one-half the net profits realized by the company under its contract with said city, after there had been deducted by the company ten per cent of the total cost for making said repairs.

After the contract between the company and appellant, it appears that he went to work to assist in obtaining the contract from the city of Indianapolis, and was in the employ of the company during the months of April, May, June and July, 1907. In 1907, George W. Baxter was the cashier of the Western Construction Company. His employment as such cashier commenced in March, 1907. Baxter testified upon the trial that a record was kept at the office of the company of the sizes of the patches as the work of repairing progressed, and that the company received its information from the books that were brought in from the street as they were kept by the inspectors of the city of Indianapolis. He stated that these books, as a rule, were brought in by

Brunaugh and others; that Brunaugh would call the entry from the inspectors' books, and the same would be copied into the books of the company. This procedure seems to have commenced a day or two after the work of repairing the streets by the company under its contract commenced. The entries in the books of the company were made from the entries in the inspectors' books as to the size of the patches. The appellant, as the witness testified, read the entries from the inspectors' books to the company's stenographer and she took them down in the books of the company. The dimensions of the patches, as stated by the witness, were set down on the left side of the book, and afterwards reduced to square feet, showing the number of feet in a patch.

This witness testified that he noticed appellant calling off to the company's stenographer, as he had previously done to him (Baxter), from entries made in the books of Rosasco, a street inspector of the city of Indianapolis. At the end of each month Baxter made out, from the books of the company, the bill to be presented to the city. The company obtained its money for the work which it had performed by presenting a bill to the board of public works of the city of Indianapolis. These claims were made out by Baxter, the cashier of the company. The claim in controversy for the month of April appears to have been made out by him and presented to the board of public works for allowance, and is in the words and figures as follows:

"City of Indianapolis,          Indianapolis, Indiana.
      To the Western Construction Company, Dr.
16,691.9 square yards asphalt repairs during April at
      66¢ per contract ....................$11,016.65."

Thomas Shufelton, one of the city's inspectors, testified upon the trial that he was acquainted with appellant and had known him for seven years, and that he knew that during the time of their acquaintance appellant had been connected with the administration of the city of Indianapolis.

This witness saw appellant on April 3, 1907, the day the work of repairing the streets was commenced by the Western Construction Company. Witness had a conversation with appellant on that day. He testified that appellant came up to him on the street and said: "Tom, I am awfully glad they sent you over on this job. I want to talk to you a minute." Thereupon they stepped aside and appellant further said: "Don't know how we are going to come out of this, but if you will raise these patches one-third, I will give you $150 a month." In reply to this Shufelton said: "Never mind, that's all right. I will treat you fair."

George W. Baxter further testified that appellant brought the books into the company's office, and as a general rule he practically kept the record and took charge of the books in the company's office; that the company depended upon appellant to bring the inspectors' books into its office. He testified that appellant was not with him when he made out and presented the claim in question to the board of public works of the city of Indianapolis for allowance. The books of the inspectors exhibited many changes in regard to the dimensions of the patches. In some of the books the dimension of the patch work appeared to exceed the width of the street or streets upon which the repairs were made. Or, in other words, it appears from the evidence that there were entries made in the books of the street inspectors wherein over thirty-three per cent of the patching was shown to be wider than the dimensions of the streets repaired.

Appellant appears to have been on friendly terms with Shufelton and Rosasco, the street inspectors, and they seem to have given him perfect liberty each day to take possession of the books in which they had made entries of the patches and amount of work performed by the Western Construction Company. After receiving these books appellant would keep them for some time, and, as the evidence shows, made changes in regard to the amount of patching done by the company. The fraudulent changes made by him in these

books of the inspectors he thereafter caused to be entered in the books of the company, well knowing and intending, as the evidence shows, that the changes as made by him would afford the basis of claims to be made out and presented to the city of Indianapolis for allowance. The fact that some of the patches as shown in the books of the street inspectors after the changes had been made by appellant were in excess of the width of the streets repaired, appears to have attracted the attention of Blaine Miller, the civil engineer of the city of Indianapolis. Thereupon he went to see Henry Marshall, the president of the Western Construction Company, in regard to the matter. Marshall telephoned to appellant to come over. For some reason appellant could not do so at the time, but that night he went over to Miller's house and they had a conversation about the patches in question, and appellant said to Miller: "Blaine, I have been talking with Henry Marshall about these books, and have come up to see you upon this matter as a personal matter." The witness replied: "There is nothing personal in it as far as I am concerned." Appellant then said: "Does anybody else know about it besides you?" Witness replied: "Why, no." Appellant then said: "Well, what are you going to do about it?" Witness told him he was trying to find out how much the books had been changed, and asked him if he had changed them. The witness stated to appellant that he had absolute proof that the books had been changed, and asked appellant how much he had changed them.

Miller testified that appellant appeared to be greatly worried about the matter, and desired to know if the company would knock off seven or eight thousand yards and turn in the bill for 20,000 yards if that would be satisfactory. Witness stated to him that he was going to find out how much the books had been changed, and would not turn in any bill for 20,000 yards. Appellant then said he thought 7,000 yards would cover all the changes made, and when informed

by Miller that there were changes made for work done in the months of April, May and June, he replied that these changes would not amount to over $1,500. He finally admit-. ted to this witness that he had made changes in the dimensions of the patching for the months of April, May and June, and he requested that the matter be kept a secret from Mr. Trusler, who was a member of the board of public works. In the same conversation with Miller, he admitted that he was making about $600 a month—that he was getting one-half the profits made by the company.

At the time that the witness Shufelton testified that appellant offered him $150 per month, he further testified that appellant told him that he would be ''the whole thing;'' that the company would not have any one to look after the work; that it would all be left to Shufelton. In the contract between the Western Construction Company and the city of Indianapolis it was agreed that said company was to have sixty-six cents per square yard for the work performed in patching the streets. It appeared that the profits of appellant accruing to him under his contract with the company out of the work reported for the month of April, 1907, were $1,716.38, for the month of May of the same year, $2,457.25, and for June, $2,407.58, and for July, if the contract of the company with the city had not been terminated by reason of the discovery of the fraud perpetrated by appellant, his profits would have amounted to $3,000. As shown, the entire profits of the four months accruing to the company for the work reported to have been done by it totaled $19,000. Appellant's part thereof was one-half less ten per cent. At sixty-six cents per square yard, as the State argues, these total profits certainly would represent a great many square yards of patching by the company, or, in other words, would cover a multitude of changes made in the dimensions of the patches. These profits certainly do not tend to show that appellant's statement to inspectors Shufelton and Rosasco that his company had undertaken the work too cheap was true. Possibly,

however, the company's bid in reality was too low, and appellant was intending and endeavoring to make the changes in question in order that the company might not lose money by reason of its indiscretion in bidding too low for the work to be performed.

There is evidence in the case to show that when the acts of appellant were being discussed by the public press and when the grand jury was about to take cognizance of the matter and investigate, he, without waiting for any indictment to be returned, left the city of Indianapolis, taking with him all the money which he had on deposit in the bank, and went first to the city of Wabash, Indiana, where he stopped at a hotel and registered under an assumed name. He then went on to the city of Detroit, Michigan, and there registered under an assumed name. He remained at Detroit until he was arrested by the sheriff of Marion county and returned to the city of Indianapolis. He attempted to advance excuses for his departure, one of which was that he was trying to "collect himself," and to avoid being annoyed about the matter by his friends or persons who knew him.

One view advanced by the State in its argument upon the evidence is that it shows a conspiracy among appellant and other persons to commit the offense. Be this as it may, there is certainly ample evidence to show that appellant from time to time took possession of certain books from inspectors Shufelton and Rosasco in which entries of the dimensions of the patches of repair work done by the Western Construction Company were made; that during the time he had these books in his possession he purposely, intentionally and unlawfully changed the figures or dimensions in respect to the patches of repair work, and caused such changes to be copied into the books of the Western Construction Company, with the full knowledge that the changes made and copied into the company's books would afford or constitute the basis to make out a claim or claims against the city of Indianapolis. In fact, there is evidence to show that he in making the

changes in question and in causing them to be entered in the books of the company, intended that such changes should be used or employed as the basis of a claim against the city of Indianapolis. It is certainly manifest that, after he had increased the dimensions of the patches and had caused such fraudulent changes to be entered in the company's books, any person in making out a claim from these books could make out no other claim than one which was false.

The evidence discloses that George W. Baxter, cashier of the Western Construction Company, copied the claim in question from the books of the company, and therein were embraced the false and fraudulent changes made by appellant, and which he had copied or caused to be copied into and made a part of the company's books.

While it is true that the evidence shows that Baxter, after making out the claim from the books in question, presented it for allowance to the board of public works of the city of Indianapolis, and that at the time he presented it appellant was not personally present; but, nevertheless, there is evidence fully to justify the jury in concluding that Baxter, in making out and presenting the claim, was the innocent agent of appellant by and through whom the latter caused the claim to be made out and presented for allowance to the board of public works. If Baxter was either the innocent or guilty agent of appellant, the latter would, upon either view, be guilty of the offense charged.

The evidence fully establishes that the claim in question was the offspring of the fraud and wrong perpetrated by appellant and that it was false and fraudulent. That is to say, that the 16,691.9 square yards of asphalt repairs, made as stated therein, were largely in excess of the work of repairing which had been actually performed by the Western Construction Company, under its contract, during the month of April, 1907, and that the amount of $11,016.65, as therein stated to be due to the company, greatly exceeded the amount

due for the repairs which the company had actually made during said month of April.

There is evidence going to show that appellant received from the company a portion of the proceeds accruing from the false claim in question. In fact, it appears that on the day the claim was presented by Baxter appellant was about the office of the Western Construction Company in the city of Indianapolis, and that he on that day received from the company a check for a certain amount of money. Under the evidence in the record, the jury could have entertained but one view, namely, that it pointed to the guilt of appellant. Certainly there is much reason for the contention of the State that there is evidence in the case which fully sustains the verdict of the jury upon every material point. This proposition the evidence fully sustains.

It is claimed by appellant's counsel that certain witnesses testifying upon the part of the State committed perjury, and therefore ought to have been discredited by the jury.

20. This question was one for the determination of the jury.

We have given this case a patient consideration, and have considered all of the points presented by appellant's learned counsel, but find no available error.

The judgment, therefore, is affirmed.