## SHULAR *v.* THE STATE.

[No. 19,954.   Filed March 20, 1903.]

CRIMINAL LAW.—*Assault and Battery With Intent to Commit Rape.—Evidence.*—In a prosecution for assault and battery with intent to commit rape, the prosecuting witness testified that as she was going to her home in the night-time she saw two men standing in a stairway between two saloons; that one of them followed her, demanded to know where she was going, caught hold of her and began to pull her, saying, "Come on with me;" that she resisted, and attempted to give an alarm, and he choked her, and struck her, and let her go.   A witness testified that he ·was standing at the place indicated by the prosecuting witness, on the night in question, with defendant, and saw a woman pass; that defendant followed her, using such language as to indicate his intent to have carnal intercourse with her, forcibly and against her will if necessary.   The prosecuting witness shortly after the assault and while she was in a nervous condition accused another as her assailant, but afterward identified defendant.   *Held,* that the evidence was sufficient to sustain a conviction for an assault and battery with the felonious intent to commit rape.   *pp. 302-307.*

SAME.—*Appeal and Error.—Evidence.*—The Supreme Court is not warranted in disturbing a judgment in a criminal prosecution unless there is such an absence of evidence in respect to some fact or element material to the crime charged as to present a question of law, which, under the circumstances, must be decided in favor of the convicted party.   *p. 307.*

SAME.—*Evidence.—Assault and Battery With Intent to Commit Rape.*—No error was committed in permitting a witness to testify in a prosecution for assault with intent to commit rape as to whether the prosecuting witness directly thereafter made complaint of the assault and battery perpetrated upon her.   *pp. 307, 308.*

SAME.—*Instruction.—Assault and Battery With Intent to Commit Rape.*—Where in a prosecution for assault and battery with intent to commit rape it appeared that the prosecuting witness shortly after the assault identified a person other than defendant as the guilty one, it was not error for the court to instruct the jury that in the event they found that she had identified such other person as the guilty one, they had the right to take into consideration her condition, surroundings, and all the facts and circumstances shown to exist at the time she made such identification.   *pp. 308, 309.*

TRIAL.—*Presence of Bailiff in Jury Room.—Criminal Law.—Appeal and Error.*—The action of the court in overruling a motion for a new trial on the ground that the bailiff was present in the jury room

and conversed with the jurors while they were deliberating on a verdict will not be reversed on appeal, where such question was presented to the lower court, tried and determined upon evidence pro and con adversely to appellant.   *pp. 309, 310.*

CONSTITUTIONAL LAW.—*Indeterminate Sentence Law.— Criminal Law.—* The indeterminate sentence law is constitutional.   *p. 310.*

From Montgomery Circuit Court; *Jere West,* Judge.

William Shular was convicted of assault and battery with felonious intent to commit rape, and appeals.   *Affirmed.*

*M. E. Clodfelter, H. N. Fine, W. T. Whittington* and *Walter Whittington,* for appellant.

*W. L. Taylor,* Attorney-General, *C. C. Hadley, Merrill Moores, Benjamin Crane* and *A. B. Anderson,* for State.

JORDAN, J.—Appellant was tried in the lower court before a jury on an affidavit and information which charged that he had perpetrated an assault and battery upon the person of Martha B. Stilwell, with the felonious intent to commit a rape.   The jury returned a verdict finding the accused guilty of assault and battery, with intent to commit rape, as charged in the affidavit and information, and further found that he was of the age of forty-two years. Over his motions for a new trial, *venire de novo,* and in arrest of judgment, the court rendered judgment on the verdict as follows: "It is therefore ordered, considered, adjudged, and decreed by the court that the defendant William Shular is guilty of assault and battery, with intent to commit a rape, as charged in the affidavit and information herein; that his true age is forty-two years, and that for the offense by him so committed he be imprisoned in the Indiana state prison at Michigan City for a term of not more than fourteen years nor less than two years, and that he be disfranchised and rendered incapable of holding any office of trust or profit for a term of five years, and that he be fined in the sum of $5, and pay the cost of this proceeding, taxed at $————."

Denying these several motions are relied on for a reversal of the judgment. Counsel for appellant contend: (1) That the verdict is contrary to law; and (2) that it is contrary to the evidence for the following reasons: (a) That it wholly fails to prove the felonious intent on the part of appellant to commit a rape; (b) that it is wholly insufficient to identify appellant as the person who committed the alleged assault and battery upon the prosecuting witness.

The State, upon the trial, introduced evidence tending to establish that Martha B. Stilwell, the injured person, was a reputable woman, the wife of McClelland Stilwell, and that she resided with her said husband in the city of Crawfordsville, in Montgomery county, Indiana. She was thirty-eight years old and had been married for fifteen years. On the night of March 10, 1902, her husband was absent from the city, and she attended a "Ben-Hur festival"—a social affair which was held at the Elk's hall in the city of Crawfordsville. She left the festival, as shown, about eleven o'clock that night; leaving earlier than she intended, for the reason that she was suffering at the time with a pain in her back. After leaving the hall for the purpose of going to her home, she first went to a drug store to procure some medicine to relieve the pain in her back. After procuring the desired medicine she left the drug store, a few minutes after eleven o'clock, and started for her home. As she passed west along Main street the electric lights were burning, and she testified that she observed two men standing in a stairway between two saloons. Immediately after passing by the point where these men were standing, she heard footsteps behind her, and became aware that some one was following her, and in a very short time the man who was following her overtook her, and rudely demanded to know where she was going. She informed him that it was none of his business, and thereupon he caught hold of her and began to pull her, saying, "Come on with me." Mrs. Stilwell stated that she demanded that he let her

go, and threatened to hit him with the bottle containing the medicine that she had purchased at the drug store. Using her own language, she testified further as to the assault committed upon her as follows: "I started to turn round. As I did, he whirled round with me, still holding my arm, and then took a firmer grasp on the arm. I said, 'I want you to let me alone.' He said, 'Keep still. I won't hurt you. Come on.' I fought desperately to get away from him. He said, 'Go with me. I won't hurt you.' I said, 'I won't, and you let me alone.' About this time we had gotten across the alley. He tried to pull me that way. I tried to get away from him, then he said, 'Why, I won't hurt you,' and put his face over my shoulder, right close to my face, and said, 'I won't hurt you.'. Again I said loud, 'I want you to let me alone.' He pulled me over toward the alley. I fought with my right arm to get away from him. He took me by the throat. [Just here the witness indicated as to how the person placed his fingers at her throat.] He choked me until I could not get my breath, all the time saying something in a low voice—I don't know what it was. Finally he let loose just long enough that I could give two screams. Then he choked me again and struck me here on this lip, all the time saying something—I do not remember what it was he said—and had the position of his arm pulling me directly straight this way, and took his hand and struck me there [indicating], and then let me go. He ran west down the alley, and I ran north." She then testified that after the man who had assaulted her had run down the alley, and as she was going or running north, she met a man who worked at Robb's grocery, and complained to him about the assault, and soon after she met a police officer, and made a similar complaint to him, and that the police officer blew his whistle. She stated then that she met Mr. Naylor, and other persons with whom she was acquainted, and made complaint to them, and was taken by Mr. Naylor to his house, where a physician was called. The place where

she was struck on the lip was cut by one of her teeth. Her face was bruised and was bleeding, and the marks on her throat disclosed that she had been choked, and her condition indicated that she had been assaulted by some one. The physician who called to see her treated her for a fractured or broken bone in the throat. Mrs. Stilwell while at Mr. Naylor's house that night is shown to have been in a very nervous, excited, and hysterical condition. She was not able to give any particular description of her assailant. She, however, said that he had a dark mustache, but could not state whether his clothes were black or white, but she believed that he had on a soft hat. While at Naylor's on that night a man by the name of Barnwell was brought in, for her to see if she could identify him as the person who had assaulted her; and she said, after looking at him, "That is the man." She explained afterwards that the reason she made the mistake in identifying Barnwell as her assailant was because she was at the time in a nervous and excited condition when he was brought before her. After the appellant was arrested and placed in jail, Mrs. Stilwell was taken to the prison on Thursday following the Monday night when the assault was committed, in order to see if she could identify him as the person who had assaulted her on the occasion in question. Appellant was lined up with other prisoners in the dining-room of the jail at the time, and she was asked to make an examination of the men, and point out, if she could, the one who had assaulted her. After looking the men over, she recognized appellant as the guilty party, and, pointing to him, said, "There is the man." He, in response thereto, said to her, "Lady, look at me well." She then stepped up to him and said, "Do you see this? [pointing to her lip and some bruises on her face] You did it." It does not appear that appellant made any response to this latter declaration of Mrs. Stilwell.

John Rooney, a witness for the State, testified that soon after eleven o'clock on the night in question he was standing

in the stairway between the two saloons hereinbefore mentioned, in company with appellant, talking to him; that while they were standing there a woman passed, going west; that, as she passed, the appellant used vile language in regard to her, and as to what he proposed to do; and that, immediately after making this remark about the woman who had passed, appellant started after her, and was about thirty feet behind her. Rooney testified that he saw the woman turn south on Washington street at the First National Bank, and that he saw the appellant turn south at the same place, at a distance of about thirty feet behind her; that he then left and went upstairs, but soon afterwards he heard a police whistle blown.

There is evidence to show that the two men whom Mrs. Stilwell had met after she was assaulted were Jack Kelly a policeman, and Arthur Stewart, and upon her complaint to the former in regard to the assault he blew his police whistle. Several witnesses testified that about eleven o'clock that night they saw appellant in the saloon just east of the stairway in which Mrs. Stilwell said she had seen the two men standing as she passed along. Appellant himself testified that he went into this saloon about a quarter past ten o'clock, and remained there about three-quarters of an hour, and left when the proprietor said he wanted to close up. He resided about two miles west of the city of Crawfordsville, with his father, and, in describing the route which he took home after leaving the saloon, he testified that he went west on Main street to Washington street, and south on Washington street to Pike street, and there turned west and went toward home, and stopped in a barn a short distance from his home, went to sleep in the barn, and remained until about three o'clock in the morning.

Mrs. Stilwell further testified that she saw the man well in the face, who had assaulted her, by means of the electric light burning in the room by the alley where she was as-

saulted; and upon being asked, when she was giving her testimony, if she could point out the man, she turned and pointed to the appellant, and said to the jury that he was the man. There is evidence other than that of Mrs. Stilwell to show that when she was taken to Mr. Naylor's residence she was bleeding and bruised, and the disheveled condition of her clothing indicated that a fierce assault had been perpetrated upon her. Before she was called upon to identify the appellant at the jail, she suggested to her husband that probably she was mistaken in identifying Barnwell as her assailant.

On the night in question the alley down which Mrs. Stilwell testified her assailant ran after he let her go was muddy, and there is evidence to show that there were tracks made in the mud by a man running west down the alley. There is other evidence given in the case, all of which either directly or indirectly goes to corroborate Mrs. Stilwell's statements, and points to appellant as the guilty person. In fact, there seems to be no witness who contradicts the statements of Mrs. Stilwell that she was followed on the night in question by some man and assaulted in the manner as herein shown.

The appellant, as a witness in his own behalf, denied that he followed her or made any assault upon her. It was shown by appellant's own admissions on his cross-examination when on the witness-stand that he had frequently violated the penal laws of the State, and had served a term in the penitentiary.

Possibly some evidence not strictly proper may, unchallenged, have been given to the jury on the trial of this cause; but as to whether there is or is not evidence in the case of such a character we neither affirm nor deny, but consider only such questions as are duly presented. We can not disturb the judgment on either of the grounds that the verdict is contrary to the law or contrary to the evidence, for the reason that there is evidence which fully sus-

tains the verdict of the jury in every material respect.
When all the evidence and circumstances in this case are
considered, we are of the opinion that it can not be seriously
controverted but that appellant was the person who com-
mitted the assault and battery on the prosecuting witness,
and that he perpetrated the same with the felonious intent
to commit the crime of rape. The language or term used by
him to express what he said to the witness Rooney when
Mrs. Stilwell passed along the sidewalk near the stairway
in which these two men were standing in regard to her,
and as to what he intended to do, is too vile and vulgar to
set out in this opinion. It fully discloses, however, that
his purpose or intent in following her, and in making the
violent and brutal assault on her as he did, was to have
carnal intercourse with her, forcibly and against her will,
if necessary, to accomplish his base purpose or design.

The rule is well settled that before this court, upon ap-
peal, is warranted in disturbing a judgment in a criminal
prosecution on the evidence alone, that there must be such
an absence of evidence in respect to some fact or element
material to the crime charged as to present a question of
law, which, under the circumstances, must be decided in
favor of the convicted party. *Lee* v. *State,* 156 Ind. 541,
and cases there cited.

Upon the trial below one Arthur Stewart, a witness in
behalf of the State, was asked the question by the State's
attorney if Mrs. Stilwell on the night in question, immedi-
ately after the assault upon her, complained to one Jack
Kelly. The witness, in response to this question, answered,
"I think so." He was then asked if she stated that she
was assaulted. Counsel for appellant objected to this ques-
tion on the ground that, as propounded, it was intended to
elicit from the witness what she said at the time she made
the complaint to Kelly. The objection was overruled, to
which appellant excepted, and the witness in response to
the question answered, "Yes, sir." It was disclosed by the

evidence that Jack Kelly was one of the persons whom Mrs. Stilwell met on the street shortly or soon after she had been assaulted, and made complaint to him in regard to the assault. Under the circumstances in this case, it was proper for the State to inquire of the witness in question if she made complaint to Kelly to the effect that she had been assaulted. The question of which appellant complains did not profess to call upon the witness Stewart to give a detailed statement of what she said in regard to the outrage that had been perpetrated upon her, but it simply called upon him to answer "Yes" or "No" as to whether she had made the complaint about the assault and battery perpetrated upon her. Both the question and the answer of the witness in response thereto were proper, and neither afford the accused any grounds for complaint. *Thompson v. State,* 38 Ind. 39; *Cross v. State,* 132 Ind. 65; *Polson v. State,* 137 Ind. 519.

It is next insisted that the court committed an error in giving instruction number six to the jury. Counsel condemn this charge on the ground: (1) That thereby the trial court made an argument to the jury, whereby it attempted to excuse Mrs. Stilwell for the mistake which she made in the identification of Mr. Barnwell as her assailant on the night of the assault; (2) that it made her alleged nervous, excited, and hysterical condition at the time of the identification of Barnwell too prominent as an excuse for the mistaken identity. The charge in question, to the extent to which the court thereby professed to advise the jury, is as fair and favorable to appellant as he could demand. It contained no specific mention in regard to the nervous, excited, and hysterical condition of Mrs. Stilwell at the time she identified Barnwell. The court thereby, among other things, merely advised the jury that in weighing her testimony as a witness upon the trial, they had the right, and it was their duty, to take into consideration the fact that before she identified the defendant as her assail-

ant she had identified another and different person as the guilty one who perpetrated the assault in dispute. In connection with this part of the charge, the court informed the jury that, in the event they found that she had identified such other person as the guilty one, they had the right to consider her condition, surroundings, and all the facts and circumstances shown to exist at the time she made such identification. It can not reasonably be insisted that by this instruction the court either gave or sought to give any undue prominence to her condition at the time she made the alleged mistake in her identification of Barnwell, which mistake she upon the trial attributed to her nervous, excited, and hysterical condition at the time of the identification. If the jury believed that she was in her normal condition when she identified Barnwell as the perpetrator of the crime in question, that fact would be an important feature for the jury to consider what weight, if any, ought to be accorded to the fact that she subsequently identified appellant as the assailant. If she was, as shown by the evidence, nervous, excited, and hysterical at the time, these facts, when considered, might be of much weight in explaining the reason why she made the mistake in identifying Barnwell as the guilty person when he was brought into her presence in the room where she was lying upon a couch immediately after the assault in controversy.

It is next insisted that appellant was prejudiced or harmed by the presence of the bailiff in charge of the jury, being in the jury room and conversing with the jurors at the time they were deliberating upon a verdict. This question was presented to the lower court, tried, and determined upon the evidence pro and con adversely to appellant. The affidavit of the bailiff in question positively shows that he went into the jury room only for the purpose of attending to some of the necessities of the jury, and when in the room he spoke to some of the jurors in regard to some of their wants and necessities; that he was not present in the

jury room at any time when the jurors were deliberating upon a verdict or discussing the evidence in the case; that he took no part whatever in any of their deliberations, and at no time did he speak to any of the members of the jury concerning the matter or matters upon which they were deliberating, except only to inquire of them if they had agreed upon a verdict, and in no manner did he influence or attempt to influence the jury, or any of the members thereof, in making up their verdict in the case. The evidence given by the bailiff, together with other evidence in corroboration thereof, if accepted by the trial court as true, which it apparently did, is sufficient to justify the holding of that court that the conduct or acts of the bailiff in question in no manner harmed or prejudiced appellant in any of his substantial rights. Consequently, under such circumstances, the decision of the lower court on the question involved or in issue will not be disturbed by this court on appeal. *Doles* v. *State,* 97 Ind. 555; *Hinshaw* v. *State,* 147 Ind. 334, and cases cited.

It is lastly contended that the statute known as the indeterminate sentence law is unconstitutional, and that the court erred in advising the jury in respect to the verdict they should return in the event they found appellant guilty of the felonious crime charged in the affidavit and information. The constitutional validity of this law has been repeatedly affirmed by a majority of this court. *Miller* v. *State,* 149 Ind. 607, 40 L. R. A. 109; *Skelton* v. *State,* 149 Ind. 641; *Vancleave* v. *State,* 150 Ind. 273; *Wilson* v. *State,* 150 Ind. 697; *Davis* v. *State,* 152 Ind. 34, 71 Am. St. 322; *Colip* v. *State,* 153 Ind. 584, 74 Am. St. 322.

The verdict of the jury, in respect to its form, and the judgment of the court thereon, is each apparently in substantial compliance with the act or statute in controversy. The writer of this opinion, however, speaking for himself alone, and not for the court, concedes that there is much force and merit in the argument of appellant's learned

counsel in respect to the invalidity of the act in question; and for the reasons stated by him in the dissenting opinion in *Miller* v. *State, supra,* he still believes that some of the essential provisions of the indeterminate sentence law are clearly antagonistic to certain provisions of the State's Constitution. The majority of the court, however, as now constituted, adhere to the decisions in the cases last above cited, and reaffirm the constitutional validity of the law in controversy.

There being no available error presented in this appeal, the judgment is affirmed.