## TERLIZZI *v.* STATE OF INDIANA.

[No. 25,074.   Filed December 7, 1926.]

1. CRIMINAL LAW.—*Instruction as to reasonable doubt held harmless error, if any.*—An instruction that a reasonable doubt must be based on some good reason arising out of the evidence or lack of evidence as to material facts, *held* harmless to the defendant in view of the uncontradicted evidence of defendant's guilt.   p. 492.

2. CRIMINAL LAW.—*Newly-discovered evidence of defendant's insanity, not ground for new trial when not pleaded.*—A motion for a new trial for newly-discovered evidence of defendant's insanity was properly overruled, said defense not being pleaded. p. 495.

3. CRIMINAL LAW.—*New trial will not ordinarily be granted to allow the formation of new issues.*—It is only in very extreme cases that a court should grant a new trial in order that new issues may be formed.   p. 495.

4. CRIMINAL LAW.—*Newly-discovered evidence of defendant's insanity not ground for new trial when such insanity not pleaded and witnesses testified on that subject.*—Where the insanity of the defendant was not pleaded, a new trial should not be granted for newly-discovered evidence thereof, especially where the witnesses by whom it is proposed to prove such insanity were present at the trial and one of them and the defendant testified on that subject.   p. 495.

From Lake Criminal Court; *Martin J. Smith,* Judge.

Maria Terlizzi was convicted of second degree murder, and she appeals.   *Affirmed.*

*William J. McAleer, Francis J. Dorsey, Gerald A. Gillett* and *Perry R. Chapin,* for appellant.

*Arthur L. Gilliom,* Attorney-General, *Edward M. White,* Assistant Attorney-General and *Edward J. Lennon, Jr.,* Deputy Attorney-General, for the State.

EWBANK, J.—This is an appeal from a conviction of murder in the second degree.   Overruling the motion for a new trial is assigned as error, under which appellant specifies the giving of instruction No. 13, and the refusal to grant a new trial because of newly-discovered

evidence to the effect that she was insane at the time of the homicide and at the time of the trial. The evidence showed without dispute that appellant went to the home of a girl recently married to her son, and after exchanging a few words, shot the girl through the neck and again shot her through the back as she ran out of the door and fell down an outside stairway, and after following to the top of the stairs, as if to see the effect of her shots, went out upon the street through the front door of the house and into her own home a few doors away, where she left the gun lying on a table in her front room; that after she had been arrested, she asked if the girl was dead, and being answered in the negative, she admitted having shot her and said she would like the girl to die, and then, upon being told that she was dead, exclaimed, "Thank God, she is dead, that is good." And, on the witness stand, appellant admitted having shot the girl, giving as a reason that she was very angry because some crochet work which she had sent her was returned, and the girl had said that she sent it back because she did not want appellant's son, but had "got another man." And it was shown that appellant's son had furnished the money with which the girl came from Italy, after which they had been married according to the civil law but were waiting for a church ceremony before the marriage should be consummated, and appellant had accused the girl of asking her son for money when they were visiting among relatives in Chicago.

The indictment charged murder in the first degree and the only plea was "Not Guilty," unsoundness of mind not being pleaded. And since the homicide was

1. clearly proved by the uncontradicted evidence of a number of witnesses, including the appellant herself, the doctrine of reasonable doubt had little application to anything under the issues except determin-

ing the degree of homicide which appellant had committed. On this subject, the court instructed the jury that, "If you entertain a reasonable doubt as to whether she is guilty of first or second degree murder, if guilty at all, then it will be your duty to find her guilty of murder in the second degree; or if you entertain a reasonable doubt as to whether she is guilty of murder or manslaughter, then it will be your duty to find her guilty of manslaughter." But the court also gave an instruction, of which appellant complains, undertaking at some length to define reasonable doubt, in which occurred the statement that a reasonable doubt "must be based on some good reason arising out of the evidence in the case or lack of evidence as to some material fact or facts of the case." In support of her contention that this was error, appellant cites *Siberry* v. *State* (1893), 133 Ind. 677, 688, 33 N. E. 681, and *Scheerer* v. *State* (1925), 197 Ind. 155, 149 N. E. 892, holding an instruction which told the jury that "a reasonable doubt is such a doubt as the jury are able to give a reason for" to be erroneous. Without undertaking to say whether an instruction that a reasonable doubt "must be based on some good reason arising out of the evidence in the case or lack of evidence as to some material fact or facts of the case" might constitute reversible error as applied to evidence of doubtful circumstances, we hold that appellant could not have been harmed by the giving of this instruction, in view of the uncontradicted evidence before the jury.

Appellant's son, the husband of the murdered girl, testified as a witness in her behalf to the effect that his mother had been a nervous woman, and that once "she was in the insane asylum" where she stayed about six weeks, and then came back home, after which she was still nervous when she was excited, and he stated on cross-examination that it was in 1918 that his mother

was in this hospital, and also that "it was about three years ago," and that "she came home and was all right. and had been all right ever since." And appellant, herself, testified that she had been "in the state hospital for the insane at Dunning, Illinois," but did not know how long she stayed there; that "all I know is when I came out, I don't know when I went in." But appellant's husband did not testify.

In support of the motion for a new trial, appellant's son made and filed an affidavit that about four years before it was filed his mother became violently insane and threatened to kill herself and suffered from insane delusions, and would pray constantly and weep violently without cause for a long period of time; that she was taken to the Cook county hospital and by order of the attending physician was confined in the Chicago State Hospital for the care of the insane at Dunning, Illinois, and remained there about seven weeks, when her husband procured her release, but was never discharged as cured; that, at the time of the murder, she was insane and manifested her insanity in a manner as stated, and "that, at the time of the trial and before, she was without sufficient mentality to employ a lawyer or to explain the condition of her case and her mind." That affiant employed an Italian lawyer from Chicago to defend his mother, to whom he explained her case, and the lawyer procured the written record from the Chicago State Hospital for the insane, showing her condition and that she was insane at the time she was incarcerated therein, and then promised he would defend on the ground of insanity but did not do so; and that affiant has now learned that said Italian lawyer was not admitted to practice in the State of Indiana and was not skilled in the law and did not know the practice in cases of this character; that if affiant had been examined as a witness in relation to the mental condi-

tion and history of his mother, he would have testified as above stated, but he was not permitted to testify touching his mother's history with reference to insanity, and the defense of insanity was not pleaded, and thereby affiant suffered a surprise which ordinary prudence could not guard against, by reason of his own ignorance on the subject of legal proceedings and reliance on the aforesaid lawyer, and his mother's inability to employ a lawyer or to explain her own mental condition. And appellant's husband also made an affidavit in support of the motion to the same general effect concerning appellant's condition four years before, with the further statement "that ever since said time the said Maria Terlizzi has suffered from the deepest melancholy and would weep for hours at a time and would declare that she could no longer live," together with the conclusion that she "has been insane for approximately four years last past, and was insane at the time of the shooting of the said Maria Page, and did not comprehend the meaning of her action and was insane at the time of this trial, and did not comprehend that she was on trial for her life," and that if he (the affiant) had been put on the witness stand, he would have so testified. And he added the same statement with regard to a lawyer from Chicago having been employed by his stepson and what the lawyer did and failed to do that was contained in the son's affidavit, also stating that he attended the trial, but asserting his own lack of knowledge as to the practice of courts in murder cases in the State of Indiana.

No error was committed in overruling this motion. The defense in support of which the alleged newly-discovered evidence is offered could not be made 2-4. under the issue on which the case was tried, if objection were made, and it must be a very extreme case in which the court is charged with the duty

to grant a new trial in order that new issues may be formed. *Donahue* v. *State* (1905), 165 Ind. 148, 156, 77 N. E. 996; *Hopkins* v. *State* (1913), 180 Ind. 293, 295, 102 N. E. 851.

Neither can we subscribe to a rule of practice under which a defendant could be certain of obtaining a new trial by failing to plead insanity until after a verdict of guilty should have been returned, and then presenting affidavits to the effect that she was and continuously had been insane. And this is especially true where the witnesses by whom the newly-discovered evidence is to be given were present in court at the time of the trial and one of them, as well as the defendant herself, testified without objection on the subject to which that evidence relates. No error was committed in overruling the motion for a new trial.

The judgment is affirmed.