## CARLIN *v.* STATE.

[No. 26,098. Filed February 20, 1933. Petition for reversal and writ of error coram nobis granted and petition for writ of error coram nobis dismissed. May 1, 1933.]

*George W. Miles,* for appellant.

*James M. Ogden*, Attorney-General, and *V. Ed Funk*, Deputy Attorney-General, for the State.

ROLL, J.—Appellant was prosecuted upon a grand jury indictment for murder in the first degree returned by the Jefferson County grand jury, wherein he was charged with the unlawful killing of one Frank Knoebel, which killing occurred on the 30th day of December, 1930.

Upon appellant's motion and affidavit for a change of venue from the county, said cause was transferred to Ripley County where the case was tried before a jury upon appellant's plea of not guilty.

The jury returned the following verdict:

"We, the jury, find the defendant guilty of murder in the first degree as charged in the indictment, and that he do suffer death.
Signed, Evert Waters,<br>Foreman."

Appellant filed his motions: (1) to set aside the verdict; (2) motion in arrest of judgment; and (3) motion to modify the verdict; each of said motions was by the court overruled.

The court thereupon pronounced judgment upon the verdict that appellant suffer the death penalty.

Appellant thereafter filed his motion for a new trial, which was overruled by the court. Appellant assigns as error: (1) the overruling of his motion to set aside the verdict; (2) the overruling of his motion in arrest of judgment; (3) the overruling of his motion to modify the verdict; and (4) the overruling of his motion for a new trial.

Appellant, in his brief, under proposition 1, states two abstract propositions of law, which are, without doubt, correct statements of the law, but makes no attempt whatever to apply them to this case. It has been many times held by this court that the statement of abstract propositions of law without ap-

plying them to the case at bar presents no question on appeal. *Smith* v. *State* (1924), 194 Ind. 624, 144 N. E. 141; *Dampier* v. *State* (1924), 194 Ind. 646, 144 N. E. 241; *Board, etc.,* v. *Ryan* (1915), 183 Ind. 664, 110 N. E. 58. Appellant, under his first proposition, makes the further point as to why the court erred in its ruling on his motion to set aside the verdict to the effect that the jury had no right to fix the penalty; that such was the province of the court, and that the jury by so doing invaded the province of the court, and therefore the verdict of the jury should have been set aside. In support of this proposition he cites *Wabash, etc., R. R. Co.* v. *Locke* (1887), 112 Ind. 404, 14 N. E. 391, 393, 2 Am. St. Rep. 193, and *Deal* v. *State* (1894), 140 Ind. 354, 39 N. E. 930, 934. In the first case the court was discussing the respective duties of the court and jury in a damage case. In the course of its opinion, the language used in the case of *Metropolitan R. W. Co.* v. *Jackson,* L. R., 3 App. Cas. 193, was quoted, to the effect:

"The judge . . . has a certain duty to discharge, and the jurors have another and a different duty. The judge has to say whether any facts have been established by evidence from which negligence may be reasonably inferred; the jurors have to say whether, from those facts, when submitted to them, negligence *ought to be inferred.* It is, in my opinion, of the greatest importance in the administration of justice that these separate functions should be maintained, and should be maintained distinct. . . ."

In the other case cited by appellant the court was discussing the respective duties of the court and jury and there said, and we think correctly so, that:

"The jury can no more invade the province of the court than the court can that of the jury. It is true, in criminal cases, the jury are not bound by the instructions of the court, as to the law, as in civil cases, but may determine it for themselves

contrary to the views of the court. But the province of the court to instruct them as to the law is the same in both civil and criminal cases, the only difference being, as before observed, the jury are not bound by the court's instructions in criminal as they are in civil cases."

There can be no serious controversy as to the correctness of the above statements of the law. The difficulty comes in making the proper application. It is ▇ also well settled law in this state that a verdict of a jury will not be stricken down or set aside unless it is so defective and uncertain on its face that no judgment can be pronounced upon it; such verdict is good if the court can understand it. *Page* v. *State* (1923), 193. Ind. 442, 139 N. E. 143; *Palmer* v. *State* (1926), 198 Ind. 73, 152 N. E. 607; *Bronnenberg* v. *State* (1926), 198 Ind. 314, 153 N. E. 477.

Appellant also contends that his motion to set aside the verdict should have been granted because under §2341.2 Burns' Statute Sup. 1929, Acts 1929, ▇ Chap. 54, §6, p. 138, it was the province of the jury to find the defendant's guilt and it was for the judge to fix the punishment. It is true that under the above cited statute the jury had no right to fix the punishment; that was for the court to do. The question here raised is whether that part of the verdict which fixes the punishment at death vitiates the verdict so that a valid and legal judgment cannot be rendered upon the residue thereof. We think not. It has been held in the recent case of *Wallace* v. *State* (1932), *ante* 68, 183 N. E. 29, where a similar question was decided that that part of the verdict which fixed the punishment should be treated as surplusage, and when so treated the residue of the verdict was regular and sufficient upon which to render a valid and binding judgment. *Mahok* v. *State* (1931), 202 Ind. 473, 174 N. E. 281; *Veatch* v. *State* (1878), 60 Ind. 291. We there-

fore conclude that the verdict of the jury was sufficient and valid and that the court did not err in overruling appellant's motion to set aside the same.

Appellant insists that the court erred in overruling his motion in arrest. The reasons assigned in his motion are: (1) That the verdict is contrary to law, and (2) that the jury invaded the province of the court by fixing the penalty in said verdict. A motion in arrest can present two questions only: (1) That the grand jury, which found the indictment, had no legal authority to inquire into the offense charged for the reason that such offense was not within the jurisdiction of the court; (2) that the facts stated in the indictment or affidavit do not constitute a public offense. §2326 Burns' Ann. St. 1926, Acts 1905, p. 584. As appellant does not attempt, by his motion in arrest, to raise either of the two questions, he fails to present any question by such motion for our consideration. For this reason appellant's motion in arrest was properly overruled.

Appellant's motion to modify the verdict of the jury presents no question, as such a motion is unknown to our practice. The authorities cited by appellant in his brief present the question on motion to modify the judgment and do not support appellant's contention that the verdict of the jury should have been modified.

Appellant's fourth proposition relates to the overruling of his motion for a new trial, wherein he assigns three reasons: (1) The verdict of the jury is not sustained by sufficient evidence; (2) the verdict is contrary to law; (3) the verdict is contrary to the law and the evidence. The third reason assigned presents no question under §2325 Burns' Ann. St. 1926. *Skiles* v. *State* (1929), 89 Ind. App. 89, 165 N. E. 760; *Guetling* v. *State* (1925), 196 Ind. 643, 148

N. E. 146, 927. Appellant's first reason for a new trial challenges the sufficiency of the evidence to support the verdict. Under this assignment of error an appellate court will not weigh the evidence, and if there is any evidence, if believed by the jury, to prove every material element of the crime the verdict will not be disturbed on appeal. *Lowery* v. *State* (1925), 196 Ind. 316, 147 N. E. 151, 148 N. E. 197; *Barry* v. *State* (1918), 187 Ind. 49, 118 N. E. 309; *Shular* v. *State* (1903), 160 Ind. 300, 66 N. E. 746; *Luther* v. *State* (1912), 177 Ind. 619, 98 N. E. 640. In considering the sufficiency of the evidence to sustain the verdict we will consider only the evidence most favorable to the state, and if there is any legally admitted evidence to sustain the essential elements of the charge the judgment must stand. *Lamar* v. *State* (1921), 190 Ind. 235, 130 N. E. 114; *Berry* v. *State* (1919), 188 Ind. 102, 122 N. E. 324. The evidence introduced at the trial is exceptionally free from contradiction and, in substance, shows the following facts:

Appellant was in his early life unfortunate. His father and mother were separated when he was very young and he was compelled thereafter to live first in one home and then in another. Sometime after 1925, while living in Jeffersonville with his father, he was arrested for burglary, tried and sentenced to the State Reformatory at Pendleton for a period of from two to fourteen years. He was made a "trusty" and escaped from that institution. After his escape he went west and later went to Chicago. Unable to find work there he went down to the "Army" to get some clothes and other things he had left there. He got into a fight with an army officer and was taken to the office where his fingerprints were taken, and was there identified and returned to the reformatory at Pendleton, Indiana. He remained there till he was paroled on December 22, 1930.

After he received his parole papers he left for Jefferson-ville, Indiana, arriving there about 6 o'clock in the eve-ning. The next morning he saw the sheriff and exhib-ited to him the "slip" he got from the reformatory; went to Louisville that afternoon and stayed all night at a hotel; came back to Jeffersonville the next day. He had Christmas dinner with his father, and that eve-ning went to a show with his uncle and aunt. By this time he was out of money and had no place to stay. He said he became disgusted and stole a Whippet coupe automobile and started to Linton. He went through Salem where he robbed a hardware store of about $11.00 in money, two revolvers, a shot gun and some shells, and two boxes of cartridges; drove to Bloomington, Indianapolis, Columbus, and Madison. The night he reached Madison he robbed Riddle's hardware store; while in the store some one came in and he forced him to "stick 'em up" and let him out at the front door. He left his shoes in the hardware store and, as the weather was cold, he broke into a garage and tore up an old overcoat and wrapped his feet with the rags. He slept in his car the rest of the night, and the next day roamed about town till about one o'clock in the afternoon. While walking down an alley he came to a basement stairway of the Odd Fellows Building. He went down into the basement where it was warm and sat down in a chair in front of the furnace and went to sleep. He was afterwards awakened by Arch Monroe, the janitor. He was questioned by Mr. Monroe as to where he had been, where he was going and what he was doing there. Mr. Monroe went out in a short time and met Frank Knoe-bel, a policeman, and told him about the man he had just left in the basement, and asked him if he would go down there with him. Knoebel was dressed in citi-zen's clothes, but went with Monroe back to the base-ment where they found appellant, apparently asleep.

Knoebel talked with him for a while, asking him about the same questions Monroe had asked him. He said he was from Jeffersonville and was going to Carrollton, Kentucky, to work. Knoebel left in a little while telling appellant that he would go out and see if he could locate him a pair of shoes. Knoebel returned in a short time with Charles Stewart, chief of police, who questioned appellant. After he had talked with appellant for a few moments Mr. Stewart and Mr. Knoebel walked back to the coal bin and talked together about the probability of appellant being connected with the robbery of Riddle's hardware store the night before. They decided that Mr. Stewart should go out and make a further check and obtain further facts if possible. Mr. Stewart came back and asked appellant what size shoes he wore, and told appellant to remain there with Mr. Knoebel and he would go out and see if he could find a pair of shoes for him. Soon after Mr. Stewart left appellant got up out of his chair and stretched himself and walked around the furnace near the stairway. He said he wanted a drink of water. Mr. Monroe said he would get him a drink. When Mr. Monroe started to get him a drink of water appellant started to run up the basement stairway. Mr. Knoebel grabbed him and said to Monroe, "grab that gun"; appellant pulled back and shot Knoebel two times. As soon as Knoebel was shot he let loose of appellant and cried out two or three times, and screamed like he was in pain and ran to the top of the stairway. Appellant followed but was caught between the two cellar doors which fell down upon him, and before he could free himself Mr. Stewart (chief of police) returned, who, with the assistance of others, arrested appellant. Two revolvers were taken from him, and he was taken immediately to the county jail and Knoebel to the hospital, where he died about one hour later.

Appellant, in conversation with two or three police officers at the jail soon after the shooting, when asked why he shot Knoebel, said that he did it to get away; that he intended to shoot anyone who tried to take him; that he couldn't go back to Pendleton; that he did it because Knoebel tried to stop him and that he didn't want to be taken. After a careful consideration of all the evidence we are of the opinion that it abundantly supports the verdict.

Appellant contends that there was no evidence of malice and hence he was erroneously convicted of first degree murder, as malice is an essential element of that crime. From a synopsis of the evidence already given it is apparent that the court was justified in submitting to the jury, under proper instructions, the question of premeditation. True, without proof to the satisfaction of the jury beyond a reasonable doubt of premeditated malice, there could be no legal conviction of murder in the first degree. In the instant case the evidence was such that the jury might have reasonably found the intentional use of a deadly weapon in a manner likely to and which did actually cause death. In fact the defendant himself told the police officers that he shot Knoebel because he attempted to stop him. It is true appellant also testified that he scuffled with the deceased and that he (Knoebel) kicked him in the side, which caused him to shoot, and again he testified to facts that would tend to support a plea of self-defense. But from the character of the act, the manner and circumstances of its execution, and from the character of the weapon used, all as shown by the evidence, we think the jury had abundant evidence from which they could determine that the act was done with malice. *Welty* v. *State* (1912), 180 Ind. 411, 422, 100 N. E. 73; *Coolman* v. *State* (1904), 163 Ind. 503, 72 N. E. 568.

Appellant objected to certain remarks of the prosecuting attorney in his opening statement to the jury to the effect that the evidence would show that the defendant arrived in Madison on the 29th day of December, 1930, and on that night he burglarized a hardware store, and was guilty of other crimes. Appellant moved to set aside the submission and to discharge the jury. The above extract from the opening statement appears only in the original bill of exceptions containing the evidence and nowhere by a special bill of exceptions.

It has been decided by this court that misconduct on the part of counsel is reviewable only when brought into the record by a separate bill of exceptions. *Fritz* v. *State* (1926), 198 Ind. 229, 153 N. E. 408; *Barksdale* v. *State* (1919), 189 Ind. 170, 125 N. E. 515. In the case of *McCoy* v. *Able et al.* (1891), 131 Ind. 417, 30 N. E. 528, 530, 31 N. E. 453, in speaking of matters properly incorporated in the original bill of exceptions, this court said:

"In order to come within the rule stated the bill of exceptions must be confined to the single office of exhibiting the report of the evidence and the matters directly and properly pertaining thereto."

We find that the judge of the trial court, in his certificate attached to the original bill, makes no reference whatever to the remarks of the prosecuting attorney set out in the bill; neither does the official shorthand reporter, who transcribed the evidence and took down in shorthand the alleged remarks, make any reference thereto. As far as the record is concerned we have no authenticated record that the remarks were in fact made at all. We are of the opinion that the alleged remarks are not properly in the record and therefore no question is presented for our determination. *McPherson* v.

*State* (1912), 178 Ind. 583, 99 N. E. 984; *Williams* v. *State* (1908), 170 Ind. 644, 85 N. E. 349.

Appellant sought a new trial below on the ground of newly discovered evidence, which was presented in the form of an affidavit signed by George W. Miles, the attorney appointed by the court to defend appellant. The affidavit recites the limited opportunity affiant had to talk with appellant before the trial and that he was an entire stranger to him; that none of appellant's relation or friends were present at the trial to render any assistance in the preparation of the defense or to inform him of the state of mind of appellant. That in talking to appellant he appeared sane and fairly intelligent and nothing appeared in his actions to the contrary prior to the trial. Affiant recites that his attention was called to the condition of appellant's mind during the course of the trial; that at times defendant's mind seemed to be a blank and apparently did not realize the responsibility of his acts, or to realize the seriousness of the offense with which he was charged, or the extent of the punishment he was likely to receive, and while on the witness stand in his own behalf at times failed to respond to questions asked him with intelligent answers; for instance, when asked by the prosecution what he did when he got to Madison, he answered, "I looked over the town and its stores." The prosecuting attorney interposed, "With the intention of robbing one of them?" and defendant answered, "Yes." The affidavit recites several contradictory statements appellant made while testifying.

If it was the purpose of appellant, by the affidavit filed in support of his motion for a new trial on the ground of newly discovered evidence, to show that appellant was insane at the time he committed the alleged offense (and we can conceive of no other) and that, for such

reason, the court should have granted his motion for a new trial and permitted him to make the special defense of insanity, we think the court was correct in its ruling. The affidavit filed in support of the motion contains no new evidence at all. It only recites facts which occurred during the trial and within the view and hearing of the court and jury trying the case, and consisted of the actions and demeanor of the appellant while testifying and answers made by him, which apparently were frank, intelligent and honest.

There is also another reason why appellant's motion for a new trial cannot prevail. Appellant had filed no plea of insanity, nor had he requested the court, before the close of the evidence, to permit him to file such a special plea. Therefore no issue was tendered to the trial court upon the mental condition of appellant at the time he committed the alleged crime, and any evidence he might have offered bearing upon that subject would not have been competent under the issues as was then presented. *McCutcheon* v. *State* (1927), 199 Ind. 247, 155 N. E. 544; *Hopkins* v. *State* (1913), 180 Ind. 293, 102 N. E. 851; *Donahue* v. *State* (1905), 165 Ind. 148, 74 N. E. 996, 999; *Terlizzi* v. *State* (1926), 198 Ind. 491, 154 N. E. 276.

It was said in the case of *Donahue* v. *State, supra:*

"There was no plea of insanity in the case, and, so far as the special defense of insanity is concerned, it is clear that appellant was not entitled to a new trial on the ground of newly-discovered evidence in order to interpose that defense."

In the case of *Swift* v. *Wakeman* (1857), 9 Ind. 552, it was said:

"Clearly the evidence discovered should relate to the issues made, and not to matters which were not involved in the suit."

Testimony was offered by the state and admitted over the objections of the appellant relating to admissions of appellant as to other crimes committed by him, but appellant does not incorporate the question asked, or the answer given to which he refers, in his motion for a new trial, neither does he show that any exceptions were saved to the court's ruling and does not point out in his brief, by reference to the transcript, where the same may be found. Under such a state of the record no question is presented for our consideration. *Kokomo, Frankfort, etc.,* v. *Kokomo Trust Co.* (1923), 193 Ind. 219-228, 137 N. E. 763. The admission of such evidence, even if admitted wrongfully, was rendered harmless by the testimony of the defendant, who, while on the witness stand, on direct examination testified to the commission of the same crimes mentioned in the testimony objected to, thereby rendering the objectionable evidence harmless. *Bloom* v. *State* (1900), 155 Ind. 292-297, 58 N. E. 81.

We have carefully considered each error presented by appellant and we find no cause for reversing the lower court.

Our consideration of this case is limited to the questions as they are presented by the record; but we were impressed by the remarks of counsel in oral argument, with reference to the condition of appellant's mind, and taken in conjunction with the evidence as shown by the record we think further investigation of that subject would be altogether proper. If, upon proper examination, it should appear that appellant, on account of his mental condition, should not suffer the extreme penalty, the matter should be presented to the governor for his consideration.

Judgment affirmed.